**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **MARK JORDAN,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Number 07-CV-2303** |
| ) | |
| ) | |
| **DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| **Defendant** ) | |

<u>**DECLARATION OF RICHARD WINTER**</u>

I, Richard Winter, do hereby declare and state as follows:

1.      I am the Deputy Regional Counsel for the North Central Region (NCR) of the United States Bureau of Prisons (BOP), located in Kansas City, Kansas.  I have been employed as an attorney by the BOP since August 1995.

2.       The statements I make hereinafter are made on the basis of my review of the official files and records of the Bureau of Prisons, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.   Due to the nature of my official duties, I am familiar with the procedures followed by this office in responding to the four FOIA/PA requests made by the above-captioned plaintiff, Mark Jordan, Register Number 48374-066, which were processed by the NCR and are at issue in this lawsuit.

**CLAIM ONE:**

**CHRONOLOGY**

3.      On March 19, 2007, the NCR received FOIA Request #07-4419 from the Plaintiff.

4.      In FOIA Request #07-4419, the Plaintiff requested, "copies of all documents and records relating to disciplinary proceedings against me subject of Incident Report No. 1231308. Incident Report No. 1231308, and the resulting disciplinary proceedings, involved charges of Killing Another Person and Possession of a Weapon.

5.      On March 20, 2007, the NCR sent a letter to the Plaintiff acknowledging receipt of his FOIA request.

6.      On April 10, 2007, the NCR responded to FOIA Request #07-4419 via a letter to the Plaintiff indicating that it was determined a portion of the records were releasable to him. Specifically, the letter indicated that sixty-eight (68) pages of records were releasable in full to the Plaintiff.  In addition, five (5) pages of records were created by the Federal Bureau of Investigation (FBI) and are under their control.  Pursuant to section 552(a)(6)(B)(iii) of the FOIA, the request and the 5 pages of records were forwarded to the FBI.  The letter further indicated that the remaining three (3) pages were not releasable.

7.      The response letter cited to sections 552(b)(2), (b)(7)(C), (b)(7)(E) and (b)(7)(F) as the bases for withholding the three pages.

8.      Also on April 10, 2007, a memo was sent to the Plaintiff's institution providing staff with the sixty-nine (69) pages of releasable documents, with nine (9) of those pages containing redactions.  The plaintiff was able to review these pages on June 18, 2007.

9.   On April 10, 2007, the five pages of FBI records were referred to that agency.

10.  On June 8, 2007, OIP received the plaintiff's appeal of the agency's response to FOIA #07-4419.

11.  OIP acknowledged receipt of the Plaintiff's appeal on June 8, 2007, and assigned it Appeal #07-1701.

12.  On January 25, 2008, OIP affirmed the BOP's action on FOIA Request #07-4419.

## ADEQUACY OF THE SEARCH

13.  Upon receipt of plaintiff's FOIA request # 07-4419, a search to determine the location of any and all documents relating to plaintiff's request was undertaken in order to comply with his FOIA request.

14.  The agency determined the responsive document was the Disciplinary Hearing Officer packet for the incident, which was 77 pages in length.

### JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

### EXEMPTION 5 U.S.C. § 552(b)(7)(C)

15.  Title 5, United States Code, Section 552(b)(7)(C) (hereinafter Exemption 7(C)) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy..." 5 U.S.C. § 552 (b)(7)(C).

16.  In this case, Exemption 7(C) of the FOIA was asserted to protect the identity of third-party individuals, the release of which could subject them to an unwarranted invasion of personal privacy. Release of the information could subject them to unanticipated, and

3

unwanted  injury to their reputation. Specifically, the names of the individuals requested as witnesses was redacted, along with a few handwritten words along side the name which contained identifying information.  The statement of the information that particular proposed witness would provide was not redacted.  Only the name and few words next to the name, for example noting the individual's release date, were redacted.  In addition, exemption 7(C) was applied to redact the names of witnesses from the DHO Report and a staff memo indicating the proposed witnesses.  Although the plaintiff himself would have received this information as part of his due process for his disciplinary proceedings, these names were determined not releasable under FOIA, as the privacy of the named individuals outweighs any public interest in that information.

17.     The BOP determined that there was no public interest in the release of the names of the particular individuals, nor any interest which would counterbalance the individual's privacy in having the information withheld under Exemption 7(C).

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

## EXEMPTION 5 U.S.C. § 552(b)(7)(E)

18.     Exemption (b)(7)(E) is applied to prevent disclosure of information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

19.     This exemption was applied to a page which included three still frames from a video

4

surveillance camera which views the area in which the murder took place.  These photos are not releasable because they show the parameters and capabilities of the cameras, such that an individual could then commit an act without detection, knowing which areas the camera cannot view.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

## EXEMPTION 5 U.S.C. § 552(b)(7)(F)

20.     Exemption (b)(7)(F) provides for the withholding of information or records compiled for law enforcement purposes the release of which could endanger the life or physical safety of any individual.  This exemption was applied to a few words contained within a list of proposed witnesses which identified a prison security threat group (commonly referred to as a "gang.").  The name of the prison gang was redacted because it could reasonably be expected to cause disruption and potential physical assaults to reveal that one inmate was alleging a particular gang was responsible for the murder.  Accordingly, it was determined exemption (b)(7)(F) should be applied to redact the name of the particular gang.

21.     Similarly, within another section of the same document, it is noted that one of the proposed witnesses is a member of another gang.  It was determined this information should be redacted pursuant to 7(C) to protect that individual's privacy, as well as 7(F), as the release of such information may cause physical harm to that individual or others.

**CLAIM TWO:**

**CHRONOLOGY**

22.     On May 15, 2006, the NCR received FOIA Request #06-6431 from the plaintiff.

23.     In FOIA Request 06-6431, the plaintiff requested, "a complete list of staff names and titles for all staff at the United States Penitentiary - Administrative Maximum at Florence, Colorado."

24.     On May 23, 2006, the NCR sent a letter to the plaintiff acknowledging receipt of his FOIA request.

25.     On July 14, 2006, the NCR responded to FOIA Request #06-6431 via a letter indicating the staff roster was not releaseable, and cited FOIA Exemption (b)(7)(F).  Specifically, the letter indicates that releasing the roster of staff names could reasonably be expected to endanger the life or physical safety of any individual.

26.     On August 9, 2006, the Office of Information and Privacy (OIP) received an appeal of this response from the plaintiff.

27.     On August 11, 2006, OIP acknowledged receipt of the plaintiff's appeal and assigned it FOIA Appeal #06-2753.

**ADEQUACY OF THE SEARCH**

28.     Upon receipt of plaintiff's FOIA request # 06-6431, a search to determine the location of any and all documents relating to plaintiff's request was undertaken in order to comply with his FOIA request.

29.     The agency determined the only responsive document was the staff roster for the

6

Administrative Maximum Security Penitentiary in Florence, Colorado ("ADX Florence").
The staff roster is 6 (six) pages in length.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

## EXEMPTION 5 U.S.C. § 552(b)(7)(F)

30.    Exemption (b)(7)(F) provides for the withholding of information or records compiled for law enforcement purposes the release of which could endanger the life or physical safety of any individual.  The material which the BOP has withheld pursuant to Exemption 7(F) in this FOIA request could harm the safety and security of the institution because it would provide an individual with an easy means to intimidate and manipulate staff.  These staffing rosters are compiled to aid the agency in fulfillment of its law enforcement mission, and disclosure would reasonably be expected to endanger the life or physical safety of staff by providing the information which would allow anyone to threaten, manipulate, or harm them.  Based upon this concern, the agency has determined that staff rosters for security level institutions of medium, high, and administrative institutions should be withheld pursuant to Exemption (b)(7)(F).

31.    ADX Florence is an administrative security level institution, and it is the single most secure prison in the federal system.  It is designed to house inmates who require an uncommon level of security.  Unique security and control procedures have been implemented at ADX Florence to enhance the safety of staff, inmates, and visitors.

32.    Accordingly, the agency has determined there would be a risk to staff safety to release a full roster of staff names and titles of this security level institution.

**CLAIM THREE:**

**CHRONOLOGY**

33.    On November 28, 2005, the NCR received FOIA request #2006-1739 from the plaintiff.

34.    In FOIA request #2006-1739, the plaintiff sought "all documents in any and all Bureau psychological and psychiatric files relating to myself and promulgated or dated January 1, 2004 through to the date of this request."

35.    On November 28, 2005, NCR staff sent a letter to the plaintiff notifying him of our receipt of his FOIA request.

36.    The BOP responded to request #2006-1739 on January 27, 2006, via a letter indicating the releaseable records were mailed to the facility of his confinement with instructions that the documents be provided to him.  In addition, the plaintiff was notified that a portion of the records were redacted pursuant to FOIA exemptions.  The letter also informed the plaintiff to appeal the BOP's decision to OIP if he was dissatisfied.  The address of OIP was provided in the letter.

37.    On February 21, 2006, OIP received an appeal of FOIA #2006-1739 from the plaintiff.

38.    On March 3, 2006, OIP sent a letter to the plaintiff notifying him of their receipt of his appeal.

39.    On April 28, 2006, the NCR received correspondence from the plaintiff in which he stated that he had not received a response to FOIA #2006-1739.

40.    On May 15, 2006, NCR staff responded to the plaintiff via letter indicating our records indicated that he had signed for receipt of the records on February 8, 2006.

41.  On October 30, 2006, OIP responded to the plaintiff by affirming BOP's action on FOIA request #2006-1739.

**ADEQUACY OF THE SEARCH**

42.  Upon receipt of plaintiff's FOIA request # 06-1739,  a search to determine the location of any and all documents relating to plaintiff's request was undertaken in order to comply with his FOIA request.   The BOP's computerized database of psychology records, called the Psychology Database System ("PDS"), was searched.  This database is searchable by inmate register number and would allow the person searching to print records from a specific time period.  The requested records were obtained by searching the computerized PDS and they were reviewed by NCR staff.   The NCR processed these documents, releasing 36 pages, two of which had redactions pursuant to exemptions (b)(2), (b)(7)(c), (b)(5), (b)(7)(E), and (B)(7)(F).

**JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA**

**EXEMPTION 5 U.S.C. § 552(b)(2)**

43.  Exemption 2 exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).

44.  Exemption (b)(2) was applied to redact one paragraph of the Psychology Data System notes in which the writer includes the subjective perception of another staff member and advises all staff regarding appropriate actions to take with regard to the plaintiff in the future.  This portion of the document is solely related to the internal practices of agency staff, and release of this information may allow the plaintiff greater ability to circumvent

9

agency regulations.

## CLAIM FOUR:

## CHRONOLOGY

45.     On May 15, 2006, the BOP received FOIA request #06-6428 from the plaintiff.

46.     In this request, the plaintiff sought "a copy of all mail matter that was sent to or from my person, Mark Jordan, and copied by staff at the ADX Florence (otherwise known as the United States Penitentiary - Administrative Maximum)."

47.     On May 23, 2006, NCR sent a letter to the plaintiff acknowledging receipt of his FOIA request.

48.     On August 10, 2006, NCR staff responded to the plaintiff's FOIA request via letter, informing him that the Special Investigative Supervisor's File (SIS file) had been reviewed and it was determined the file was not releaseable to him. Exemptions (b)(2), (b)(7)(E), and (b)(7)(F) were cited in the response letter.

49.     On September 8, 2006, OIP received an appeal of the BOP's response to FOIA #06-6428 from the plaintiff.

50.     On September 18, 2006, OIP sent a letter to the plaintiff acknowledging receipt of his appeal.

51.     On November 16, 2006, OIP responded to the plaintiff's appeal via letter, upholding the BOP's action with regard to FOIA #06-6428.  BOP's use of exemptions (b)(2) and (b)(7)(E) were upheld by OIP.

## ADEQUACY OF THE SEARCH

52.   Upon receipt of plaintiff's FOIA request # 06-6428,  a search to determine the location of any and all documents relating to plaintiff's request was undertaken in order to comply with his FOIA request.  Staff from the Special Investigative Supervisor's Office (SIS Office)  at ADX Florence maintain files on various matters which required closer review. The SIS file at ADX Florence was located and reviewed.  The NCR processed these documents and determined the entire contents of the file, 495 pages, could not be disclosed pursuant to exemptions (b)(2), (b)(7)(E), and (B)(7)(F).

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

## EXEMPTION 5 U.S.C. § 552(b)(2)

53.   Exemption 2 exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).

54.   Not all of the plaintiff's mail was photocopied and maintained by the SIS office.  Only certain items, determined to be significant by SIS staff, were photocopied and maintained. To provide the plaintiff with the items of incoming and outgoing mail contained within the file, would show the types of correspondence and the specific correspondence which staff determined would be useful to maintain and review.  Maintaining SIS files of certain investigations regarding certain inmates are solely internal agency matters, the release of which would allow the inmate to circumvent the agency's internal policies.

11

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

## EXEMPTION 5 U.S.C. § 552(b)(7)(E)

55.   Exemption (b)(7)(E) is applied to prevent disclosure of information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

56.   The Special Investigative Supervisor's Office (SIS Office) investigates potential violations of Bureau regulations and policies, including monitoring the inmate population and security threat groups, and investigates potential violations of federal criminal law within the institution, for example, drug use, assaults, escape attempts, etc.  The SIS Office maintains various files of information gathered for law enforcement purposes and the files may be utilized with regard to the investigation for which they were gathered, or possibly as collateral information that may be useful in another law enforcement investigation.

57.   With respect to the letters which were sent to or from the plaintiff and copied and maintained by SIS staff, only certain items of correspondence were maintained.  The technique and procedure for determining which items were of interest and, therefore, should be maintained should not be released to the inmate population.  To provide such documents would provide the inmates with the ability to determine which items staff were perceiving as critical and of investigative value, would allow inmates the ability to

12

thereby circumvent staff's efforts.

**CLAIM FIVE:**

58.     The Plaintiff's Claim Five involves a request which was sent to the Executive Office for

        United States Attorneys (EOUSA) and I have no information regarding the processing of

        this request as it did not involve the NCR.

**CLAIM SIX:**

**CHRONOLOGY**

59.     On January 11, 2007, the NCR received FOIA request #2207-2578 from the plaintiff.

60.     In FOIA request #2007-2578, the plaintiff requested "a copy of all telephone records,

        including electronic transcripts of all digital recordings, for all telephone calls placed by

        my person while incarcerated at the FCI Englewood between May 1, 2004 and April 15,

        2006."

61.     On January 17, 2007, NCR staff sent a letter to the plaintiff notifying him of our receipt

        of his FOIA request.

62.     The BOP responded to FOIA request #07-2578 on January 31, 2007, via letter indicating

        that no responsive records could be located.  Specifically, the letter advised him, "Due to

        passage of time, and in accordance with Bureau policy, such recordings are deleted from

        the database."

63.     On March 23, 2007, OIP received the plaintiff's appeal of the BOP's response to FOIA

        request #07-2578.

64.     On April 6, 2007, OIP acknowledged receipt of the plaintiff's appeal via letter.

65.   On June 25, 2007, OIP responded to the plaintiff's appeal, upholding the agency's action

on FOIA request #2007-2578.  Specifically, the OIP response letter stated: "I have

determined that BOP's response was correct and that it conducted an adequate,

reasonable search for responsive records."  The letter also indicated the applicable

Federal Register section requires audiotapes and digital recordings to be maintained for a

period of six months.

66.   As agency counsel was reviewing the administrative file for FOIA #2007-2578 in

preparation for this lawsuit, it was determined that the plaintiff's request arguably sought

more than the audio recordings of his phone calls, but could also be read to request a

printout of the transactional data for his phone calls placed during the requested time

frame.  Accordingly, on April 3, 2008, a supplemental release was provided to the

plaintiff.

67.   One page of responsive documentation was located and it was provided in full to the

plaintiff.

**ADEQUACY OF THE SEARCH**

68.   Upon receipt of plaintiff's FOIA request # 07-2578,  a search to determine the location of

any and all documents relating to plaintiff's request was undertaken in order to comply

with his FOIA request.   BOP Audiotapes and digital recordings are maintained ordinarily

for six months from the date created, at which time they are overwritten with new data.

See 71 Fed. Reg. 9606 (February 24, 2006).  SIS staff at ADX Florence searched the

telephone database with negative results.  The plaintiff sought calls placed between May

1, 2004, and April 15, 2006. His request was received by the NCR on January 11, 2007. Accordingly, the audio recordings were no longer maintained pursuant to normal retention policies. As noted above, upon a more careful examination of the plaintiff's request, it was determined the printout of transactional data (date of call, time of call, phone number called, and duration of call) would also be considered responsive to the request. Accordingly, the requested transactional data was retrieved from the BOP's TruFone system by SIS staff who selected the Reports tab within the TruFone System, then the ITS2 Reports tab, then "ITS2 Telephone Accounts Statement" tab. At that point, SIS staff entered the requestor's register number, and the start and stop dates requested. The resulting printout was reviewed and processed by NCR staff. The one page printout was provided in full to the plaintiff.

**CLAIM SEVEN:**

**CHRONOLOGY**

69. On October 19, 2005, the NCR received FOIA request #2006-0513 from the plaintiff.

70. In FOIA request #2006-0513, the plaintiff requested "all documents pertaining to all claims filed by my person since January 1, 1999 (to present) with/against the Federal Bureau of Prisons (North Central Region and Central offices) pursuant to the Federal Tort Claims Act, including but not limited to, the claims filed, any attachments, exhibits, supplements or amendments thereto, and any records adjudication and disposition."

71. On October 19, 2005, NCR staff sent a letter to the plaintiff notifying him of our receipt of his FOIA request.

72.   The BOP responded to request #2006-0513 on December 15, 2005, via a letter indicating the releasable records were provided to the facility of his confinement with instructions that they be provided to him.  In addition, the plaintiff was notified that 38 pages were not releasable. The letter also informed the plaintiff to appeal the BOP's decision to the Office of Information and Privacy (OIP) if he was dissatisfied.  The address of OIP was provided in the letter.

73.   On January 5, 2006, the plaintiff appealed the BOP's response to the OIP.

74.   On December 5, 2007, OIP responded to the plaintiff's appeal, informing him the request would be remanded to the BOP for further processing of the responsive records.

75.   On April 23, 2008, the BOP provided a supplemental response to FOIA request #2006-0513.  Specifically, the BOP determined the 38 pages of records could be released to the plaintiff, subject to some redactions.

**ADEQUACY OF THE SEARCH**

76.   Upon receipt of plaintiff's FOIA request # 06-0513,  a search to determine the location of any and all documents relating to plaintiff's request was undertaken in order to comply with his FOIA request.   The BOP's tort claim database was searched and the three responsive tort claims were obtained.   The Bureau's computerized tort claim database is a nationwide database which includes any and all administrative tort claims filed with the Bureau of Prisons.  NCR staff entered the requestor's name, Mark Jordan, into the database and received a chronological list of any and all tort claims filed by Mark Jordan. The resulting list showed three claims, listed in chronological order.  Each claim has an

16

assigned claim number and hard copy files are maintained in a file room in the NCR with all files in cabinets ordered by number.  The tort claim files are maintained by fiscal year number, and then within that section, they are maintained by tort claim number assigned. The files for the three claim numbers filed by Mark Jordan were pulled from the file room and these three files were copied in full for processing.   The NCR processed these documents, releasing 174 pages in full, and withholding 38 pages pursuant to exemptions (b)(2), (b)(7)(c), (b)(5), (b)(7)(E), and (b)(7)(F).

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

## EXEMPTION 5 U.S.C. § 552(b)(2)

77.    Exemption 2 exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).

78.    Exemption "high" (b)(2) was applied to portions of the Daily Assignment Rosters because to allow the public with access to the institution's staffing patterns (which posts are filled on which days and times) could impede the effectiveness of the agency to fulfill its mission to securely house offenders.  Disclosure of staffing patterns may assist in escape efforts, facilitate disturbances, or cause harm to staff.

79.    Exemption "high" (b)(2) was also applied to portions of the Lieutenant's Log which showed the types of security checks conducted at various points throughout the day. These are internal BOP procedures undertaken by BOP staff to ensure the safety and security of staff, inmates, and the public.  Disclosure of information about these security measure to the public, including this inmate-requestor, risks circumvention of the security

17

procedures.  Disclosure of the types of tests conducted and at what times of day they are conducted would provide a greater ability to circumvent those security measures.

80.  Exemption "high" (b)(2) was applied to redact the locations of area searches at various dates and times from institution log book pages.  Disclosure of this information would allow for the ability to circumvent the search procedures by providing the schedule and order in which these searches are undertaken.  Disclosure of this information would allow a person to conceal contraband if he or she knew the dates and times various areas were searched by staff.

81.  Exemption "low" (b)(2) was applied to redact the numbers listed for each inmate base count taken in each of the various housing units.  The inmate counts are related solely to the internal practices of the agency, release of which would have no significant public benefit.

### JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA
### EXEMPTION 5 U.S.C. § 552(b)(5)

82.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party. . . in litigation with the agency."  In other words, this exemption protects documents normally privileged in the civil discovery context.

83.  Accordingly, certain responsive documents were redacted pursuant to Exemption (b)(5) as they would be protected from discovery by the Attorney-Client and Attorney Work Product privileges.  Specifically, portions of several intra-agency memos created at the direction of the Regional Counsel and the institution attorney in response to

18

administrative tort claims were redacted.

84.   The Attorney Work Product privilege applies even if litigation has not yet commenced, so long as specific claims have been identified which make litigation possible.   With regard to these documents, they were all prepared following the receipt of a properly submitted Administrative Tort Claim seeking damages for alleged BOP negligence.  Accordingly, the Attorney Work Product privilege applies to the redacted portions of these documents.

85.   Exemption (b)(5) was applied to redact portions of a memo from the institution's Supervisory Attorney to an Associate Warden at the institution, in which the attorney requested the Associate Warden's assistance in investigating the administrative tort claim.  More specifically, the redacted portion is the list of items the attorney requested be gathered to aid in her analysis of the tort claim.  This information is protected under the Attorney Work Product privilege because it reflects her opinion about which items are important in analyzing the claim.

86.   In addition, exemption (b)(5) was applied to redact portions of a memo from a BOP paralegal which analyze the property receipt records involved in the administrative tort claim.  Specifically, the paralegal's subjective opinion of the facts developed during the investigation of the tort claim, the paralegal's conclusion as to whether or not evidence of negligence could be seen in the facts, and the paralegal's analysis and recommendation as to how to proceed on the administrative tort claim were redacted.

87.   Exemption (b)(5) was also applied to redact a two-sentence recommendation from the institution Supervisory Attorney to the BOP's North Central Regional Counsel, indicating

19

her thoughts on whether or not to offer a settlement in response to the administrative claim.

88. Exemption (b)(5) was also applied to redact several sentences containing the subjective opinion of a legal intern informing the Assistant Regional Counsel of her analysis of the merits and weaknesses of the tort claim.  In addition, a sentence containing her recommendation to the Assistant Regional Counsel regarding how to proceed on the tort claim (settle or deny) was redacted.

89. Exemption (b)(5) was also applied to redact a portion of a memo contained within the administrative tort claim file which was written by a BOP paralegal.  The redacted portion includes the paralegal's opinion regarding staff actions, as well as her conclusion regarding how to proceed on the administrative tort claim.

90. Exemption (b)(5) was also applied to redact one sentence from a memo written by a BOP Lieutenant to the institution Supervisory Attorney regarding the administrative tort claim. The redacted sentence is the Lieutenant's opinion expressed to the attorney recommending action to be taken on the claim (settle or deny).

91. Exemption (b)(5) was also applied to redact a one sentence recommendation contained within a memo written by BOP Lieutenant to the institution Supervisory Attorney.  The memo was contained within the administrative tort claim file and states the Lieutenant's recommendation to the attorney regarding action to be taken on the claim.

**JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA**

**EXEMPTION 5 U.S.C. § 552(b)(7)(F)**

92.     Exemption (b)(7)(F) provides for the withholding of information or records compiled for law enforcement purposes the release of which could endanger the life or physical safety of any individual.  The material which the BOP has withheld pursuant to Exemption 7(F) in this FOIA request could harm the safety and security of the institution because it would provide the public with the institution's staffing levels, including the days and times that certain posts are staffed.  These staffing rosters are compiled to aid the agency in fulfillment of its law enforcement mission, and disclosure would reasonably be expected to endanger the life or physical safety of staff or inmates within the institution by compromising the security of the institution.

93.     Exemption (b)(7)(F) was also applied to withhold portions of the Log Book pages.  Specifically, the names of two inmates who were released from the housing unit for urinalysis were redacted.  Disclosure of this information to other inmates may risk the safety of the inmates involved, as it is possible that the urinalysis was part of a larger investigation.

**JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA**

**EXEMPTION 5 U.S.C. § 552(b)(7)(C)**

94.     Title 5, United States Code, Section 552(b)(7)(C) (hereinafter Exemption 7(C)) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy...” 5 U.S.C. § 552 (b)(7)(C).

95.    In this case, Exemption 7(C) of the FOIA was asserted to protect the identity of third-party individuals, the release of which could subject them to an unwarranted invasion of personal privacy.  Release of the information could subject them to unanticipated,  and unwanted  injury to their reputation.  Specifically, the names of individual staff members were redacted from the Daily Assignment Rosters because staff have a privacy interest in which shifts they worked, which days they were on sick leave, and which days they were on annual leave.

96.    The BOP determined that there was no public interest in the release of the names of staff working on certain days, nor any interest which would counterbalance the individual’s privacy in the information withheld under Exemption 7(C).

97.    The Bureau of Prisons determined the identities of individuals contained within the Daily Assignment Rosters should be withheld from the requestor.

98.    In addition, exemption (b)(7)(C) was applied to redact the names and register numbers of other inmates and their personal information, such as movement to various areas of the institution and their medical status, as noted within the log book pages.  This information about individual inmates was determined private, the release of which would not serve the public interest.

99.    For the same reasons, exemption (b)(7)(C) was applied to redact other inmates’ names and register numbers, as well as the housing unit status of another inmate, from an internal memo written regarding one of the administrative tort claims.  This memo was written by a Senior Officer as part of the officer’s law enforcement duties and release of

the other inmates' names and non-public information would constitute an unwarranted invasion of privacy.

**CONCLUSION**

100.  Each step in the handling of plaintiff's requests has been entirely consistent with the Bureau of Prisons and the Department of Justice procedures which were adopted to ensure equitable responses to all persons seeking access to records under FOIA/PA.

101.  The <u>Vaughn</u> Index attached to this declaration describes with particularity the documents and all meaningful information contained therein.  The documents were evaluated for segregability and it was determined portions of some documents could be released.

I declare under penalty of perjury that the matters set forth in this <u>Vaughn</u> Index Declaration, and attachment are within my official purview and are true and correct to the best of my information, knowledge, and belief.

Executed this ____6th____ day of October, 2008.

Richard Winter
Deputy Regional Counsel
Federal Bureau of Prisons
North Central Regional Office
Kansas City, Kansas

23

<u>VAUGHN</u> INDEX
JORDAN v. DEPARTMENT OF JUSTICE
CIVIL ACTION NO. 07-CV-2303

FOIA Request # 07-4419

| DOC # | PAGES | DOCUMENT DESCRIPTION | EXEMPT/ STATUS | JUSTIFICATION |
|-------|-------|----------------------|----------------|---------------|
| 1 | 3 | DHO Report | (b)7(C) | This document was partially redacted. (b)(7)(C) was applied to redact other inmates' names and register numbers. This Report was compiled as part of the staff member's law enforcement duties and release of these other inmates' names and non-public information would constitute an unwarranted invasion of privacy. |
| 2 | 5 | Memo from the plaintiff indicating proposed witnesses | (b)7(C) (b)7(F) | This document was partially redacted. (b)(7)(C) was applied to redact other inmates' names and register numbers.  Release of these other inmates' names and identifying information would constitute an unwarranted invasion of privacy. 7(F) was applied to redact the names of two security threat groups ("gangs"). |

| 3 | 1 | Memo from staff member outlining the list of proposed witnesses | (b)7(C) | This document was partially redacted.<br><br>(b)(7)(C) was applied to redact other inmates' names and register numbers.  Release of these other inmates' names and identifying information would constitute an unwarranted invasion of privacy. |
|---|---|---|---|---|
| 4 | 1 | Statement of an inmate witness | (b)7(C) | (b)(7)(C) was applied to redact this other inmate's name, register number, and statement regarding the murder.  Release of this information would constitute an unwarranted invasion of privacy of the individual. |
| 5 | 1 | Statement of an inmate witness | (b)7(C) | (b)(7)(C) was applied to redact this other inmate's name, register number, and statement regarding the murder.  Release of this information would constitute an unwarranted invasion of privacy of the individual. |
| 6 | 1 | Three still frames taken from a video surveillance camera | (b)(7)(E) | (b)(7)(E) was applied because the video cameras are installed for law enforcement purposes and by providing the inmate/requestor with the images, he could determine the areas in which the cameras do not view, and thereby circumvent the agency's monitoring intended to ensure the safe and orderly operation of the institution. |

**FOIA Request # 06-6431**

| DOC # | PAGES | DOCUMENT DESCRIPTION | EXEMPT/ STATUS | JUSTIFICATION |
|---|---|---|---|---|
| 1 | 6 | Staff Roster showing names and titles of every staff member employed at ADX Florence | (b)7(F) | (b)7(F) applied because this roster is compiled to assist the BOP in fulfilling its law enforcement mission and to release this document would reasonably be expected to harm the life or safety of an individual, in that it would provide the means for an individual to harm or threaten harm to the staff members employed at the Administrative Maximum facility. |

**FOIA Request #06-1739**

| DOC # | PAGES | DOCUMENT DESCRIPTION | EXEMPT/ STATUS | JUSTIFICATION |
|---|---|---|---|---|
| 1 | 2 | one paragraph within a Psychology Data System (PDS) note dated 6-8-2004 | (b)(2)(High) | One paragraph which spans the bottom of one page and the top of the next was redacted pursuant to (b)(2)(high).

(b)(2)(High) is applied as the material within this one paragraph is related solely to the internal personnel rules and practices of the agency and the release of this information would risk the circumvention of a statute or agency regulation.  Specifically, this paragraph is staff's subjective perception of the inmate and advises staff regarding practices when interacting with him. |

**FOIA Request #06-6428**

| DOC # | PAGES | DOCUMENT DESCRIPTION | EXEMPT/ STATUS | JUSTIFICATION |
|---|---|---|---|---|
| 1 | 495 | Special Investigative Supervisor (SIS) file containing selected items of mail sent to and from inmate Mark Jordan which were copied by SIS staff | (b)(2) (b)(7)(E) | These pages comprising the SIS file were withheld in full pursuant to (b)(2) and (b)(7)(E). (b)(2) was applied because the contents of this SIS file are solely related to the internal agency practices and release of the documents to the inmate/requestor would allow him to circumvent our internal policies. (b)(7)(E) was applied because the examination and copying of certain mail items is done for law enforcement purposes and by providing the inmate/requestor with the copied items, he could determine the law enforcement techniques and procedures, and thereby circumvent the agency's monitoring intended to ensure the safe and orderly operation of the institution, as well as to protect the public. |

**FOIA Request # 07-2578**

| DOC # | PAGES | DOCUMENT DESCRIPTION | EXEMPT/ STATUS | JUSTIFICATION |
|---|---|---|---|---|
|  |  |  |  |  |

Nothing withheld.  Requestor sought audio tapes which were no longer available pursuant to normal retention policies.  Subsequently, BOP issued a supplemental response to the requestor which was a one page full release of the transactional data printout.

**FOIA Request # 06-0513**

| DOC # | PAGES | DOCUMENT DESCRIPTION | EXEMPT/ STATUS | JUSTIFICATION |
|---|---|---|---|---|
| 1 | **2** | These are two Daily Assignment Rosters. | (b)(7)(C) (b)(2)(High) (b)(7)(F) | These pages were partially redacted to omit the title of various staff posts and the shifts during which those staff posts are staffed.<br><br>(b)(7)(C) was applied because staff have a privacy interest in which shifts they worked, which days they were on sick leave, and which days they were on annual leave.  This is not public information.<br>(b)(2)(High) was applied because to allow the public with access to the institution's staffing patterns (which posts are filled on which days and times) could impede the effectiveness of the agency to fulfill its mission to securely house offenders.  Disclosure of staffing patterns may assist in escape efforts, facilitating disturbances, or harming staff.<br>(b)(7)(F) was applied because these staffing rosters are compiled to aid the agency in fulfillment of its law enforcement mission, and disclosure would reasonably be expected to endanger the life or physical safety of staff or inmates within the institution by compromising the security of the institution. |

| 2 | 2 | This is a memo from the institution's Supervisory Attorney to an Associate Warden at the institution requesting assistance in investigating the plaintiff's administrative tort claim. | (b)(5) | This document was partially redacted.<br><br>(b)(5) was applied to omit the paragraph which outlines which specific items the attorney requested to aid in her analysis of the tort claim.  This information is protected because it reflects the attorney's opinion about which items are important in analyzing the claim. |
| --- | --- | --- | --- | --- |
| 3 | 3 | Memo from BOP Paralegal analyzing the property receipt records involved in the administrative tort claim at issue | (b)(5) | This document was partially redacted.<br><br>(b)(5) was applied to omit one sentence containing the paralegal's subjective opinion of the facts developed during the investigation of the tort claim.<br><br>(b)(5) was applied to omit the paralegal's three paragraph conclusion as to whether or not evidence of staff negligence could be seen in the facts developed during the investigation of the tort claim.<br><br>(b)(5) was applied to omit the paralegal's analysis and recommendation as to how management should proceed on the administrative tort claim. |

| 4 | 1 | Memorandum for BOP's North Central Regional Counsel from the institution Supervisory Attorney, including her analysis of the tort claim investigation | (b)(5) | This document was partially redacted.<br><br>(b)(5) was applied to omit a two sentence recommendation from the attorney indicating her thoughts on whether or not to offer a settlement in response to the administrative tort claim. |
|---|---|---|---|---|
| 5 | 1 | Memorandum from a Legal Intern to the Assistant Regional Counsel evaluating the investigation and resulting facts found, as well as providing a recommendation as to whether or not to settle the administrative tort claim | (b)(5) | This document was partially redacted.<br><br>(b)(5) was applied to redact several sentences containing the subjective opinion of the legal intern informing the Assistant Regional Counsel of her analysis of the merits and weaknesses of the tort claim.  In addition, a sentence containing her recommendation to the Assistant Regional Counsel regarding how to proceed on the tort claim (settle or deny) was redacted. |
| 6 | 2 | Memorandum from BOP Paralegal setting forth the facts and evaluating another administrative tort claim filed by the plaintiff | (b)(5) | This document was partially redacted.<br><br>(b)(5) was applied to redact the paralegal's opinion regarding staff actions, as well as the final section of the memo wherein she states her conclusion regarding how to proceed on the administrative tort claim. |

| 7 | 3 | Three one-page Lieutenant's Logs which include inmate counts, times of security checks, types of security checks conducted, and personal medical information about inmates other than the plaintiff | (b)(2)(High) (b)(7)(C) (b)(2)(Low) | These pages were paritally redacted.<br><br>(b)(2)(High) was applied to redact the types of security checks conducted at various points throughout the day.  These are internal BOP procedures undertaken by BOP staff to ensure the safety and security of staff, inmates, and the public. Disclosure of information about these security measures to the public, including this inmate-requestor, risks circumvention of the security procedures. Disclosure of the types of tests conducted and at what times of day they are conducted would provide a greater ability to circumvent those security measures.<br><br>(b)(7)(C) was applied to redact the names and register numbers of other inmates and their personal information, such as movement to various areas of the institution and their medical status, as noted within the log.<br><br>(b)(2)(Low) was applied to redact the numbers listed for each inmate base count taken in each of the various housing units.  Release of the specific number of inmates in each housing unit may compromise security.  The inmate counts within each housing unit are related solely to the internal practices of the agency, release of which would have no significant public benefit. |

| 8 | 4 | Log book pages showing when "shakedowns" (searches of living areas) were conducted and on which inmates, as well as what items were confiscated from those other individuals. Log book pages also show which areas were searched and at what times.  Log book pages include the count of inmates on the housing unit, security mechanisms which were tested and when they were tested, as well as personal information about inmates other than the plaintiff. | (b)(2)(High) (b)(7)(C) (b)(2)(Low) (b)(7)(F) | These pages were partially redacted.

(b)(2)(High) was applied to redact the locations of area searches at various dates and times. Disclosure of this information would allow for the ability to circumvent the search procedures by providing the schedule and order in which these searches are undertaken.  Disclosure of this information would allow a person to conceal contraband if he or she knew the dates and times various areas were searched by staff. (b)(7)(C) was applied to redact the names and register numbers of inmates and the contraband staff discovered in their living areas. These logs are compiled for law enforcement purposes and release of these names and the contraband found in their possession would constitute an unwarranted invasion of privacy. (b)(2)(Low) was applied to redact the numbers listed for each inmate base count taken in each of the various housing units.  The inmate counts are related solely to the internal practices of the agency, release of which would have no significant public benefit. (b)(7)(F) was applied to redact the names of two inmates who were released from the housing unit for urinalysis.  Disclosure of this information to other inmates may risk the safety of inmates involved, as it is impossible to ascertain from the document if this was part of a larger investigation. |

| 9 | 1 | Memo from Senior Officer to BOP Paralegal regarding one of the plaintiff's tort claims. Redacted information is the name and register number of an inmate other than the plaintiff. | (b)(7)(C) | This document was partially redacted.<br><br>(b)(7)(C) was applied to redact other inmates' names and register numbers, as well as the housing unit status of an inmate other than the plaintiff.  This memo was compiled as part of the officer's law enforcement duties and release of these other inmates' names and non-public information would constitute an unwarranted invasion of privacy. |
| 10 | 1 | Memo from BOP Lieutenant to institution Supervisory Attorney. | (b)(5) | This document was partially redacted.<br><br>(b)(5) was applied to redact a one sentence which is the lieutenant's opinion expressed to the attorney regarding recommended action to be taken on the claim. |
| 11 | 1 | Memorandum from BOP Lieutenant to institution Supervisory Attorney regarding an administrative tort claim. | (b)(5) | This document was partially redacted.<br><br>(b)(5) applied to redact a one sentence recommendation to the attorney regarding action to be taken on the claim. |