IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02303-REB-KLM

MARK JORDAN,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, and
FEDERAL BUREAU OF PRISONS,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' **Motion for Summary Judgment and Supporting Brief** [Docket No. 53; Filed November 17, 2009] ("Defendants' Motion"). Plaintiff, who is proceeding *pro se*, filed a Response to Defendants' Motion on December 11, 2008 [Docket No. 55], and Defendants filed a Reply on December 29, 2008 [Docket No. 56]. The Court sought additional briefing from Plaintiff regarding the ongoing nature of Claims I and VIII [Docket No. 62] and from both parties regarding limited issues pertaining to Claims IV, VI and VII [Docket No. 70]. Plaintiff filed a status report on May 1, 2009 [Docket No. 64] and informed the Court that no disputes remain as to Claim I, except to the extent that he is seeking costs and fees, and while disputes remain as to Claim VIII, they have been narrowed. Plaintiff also sought and received leave to submit supplemental authority in support of his opposition to Defendants' Motion [Docket No. 60], which the Court considers herein. Defendants filed a Supplemental Affidavit on July 17, 2009 [Docket No. 71], and Plaintiff filed a Supplemental Response on July 27, 2009 [Docket No. 72].

Accordingly, Defendants' Motion has been fully briefed and is ripe for resolution. Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1(C)(3), the Motion has been referred to this Court for recommendation. The Court has reviewed the parties' pleadings, the entire case file, the applicable case law and is sufficiently advised in the premises. For the reasons set forth below, the Court RECOMMENDS that **Defendants' Motion** [#53] be **GRANTED in part** and **DENIED in part without prejudice**.

## I. Statement of the Case

### A.    Factual Background

Plaintiff is a federal inmate at the Administrative Maximum Penitentiary in Florence, Colorado ("ADX"). Between October 2005 and July 2007, Plaintiff submitted a series of eight records requests to the Federal Bureau of Prisons ("BOP") and the United States Department of Justice ("DOJ") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a. *Defendants' Motion* [#53] at 1-12. The requests related primarily to civil and criminal proceedings involving Plaintiff and Defendants, but also included records of Plaintiff's psychiatric evaluations, telephone calls, and Administrative Remedies. *Id.* On October 29, 2007, Plaintiff filed this action appealing the disposition of his records requests, which he subsequently amended at the direction of the court clerk with a properly formatted filing on November 13, 2007. *Amended Complaint* [#4] at 1. In his Amended Complaint, Plaintiff seeks an injunction to prevent Defendants from withholding the requested records as well as attorneys' fees and costs associated with this civil action. *Id.* at 8. As set forth in Defendants' Motion, the relevant undisputed facts are as follows.

2

### 1.    Claim I

Defendant BOP received Plaintiff's FOIA/PA request #07-4419 on March 19, 2007. *Defendants Motion* [#53], Undisputed Facts ("UF") ¶ 1.  In his request, Plaintiff sought copies of all documents related to Incident Report No. 1231308 and the ensuing disciplinary proceedings.  *Id.*  Defendant BOP identified the Disciplinary Hearing Officer packet for the incident as the only responsive document.  *Declaration of Richard Winter* [#53-2] at 3 ("*Winter Declaration*").  Defendant BOP initially released sixty-eight pages of records on April 10, 2007, but cited numerous FOIA exemptions to withhold three pages of records in their entirety.  *Defendants Motion* [#53], UF ¶¶ 2-5.  Upon submitting their Reply on December 29, 2008, Defendants agreed to release copies of all requested materials relevant to Claim I to Plaintiff.  *Reply* [#56] at 1. In his Status Report, filed May 1, 2009, Plaintiff states that he received full copies of all requested materials from Defendants, and further agreed that Claim I is now moot with the exception of Plaintiff's request for litigation costs and attorneys' fees.  *Status Report* [#64] at 1.

### 2.    Claim II

Defendant BOP received Plaintiff's FOIA request #06-6431 on May 15, 2006. *Defendants Motion* [#53], UF ¶ 6.  In his request, Plaintiff sought a complete list of names and titles of all ADX staff.  *Id.*  Defendant BOP identified a six-page ADX staff roster as the only responsive document, then denied Plaintiff's request on July 14, 2006.  *Id.* ¶ 7. Defendant BOP asserted that the requested information is protected by 5 U.S.C. § 552(b)(7)(F) ("Exemption 7(F)"), which protects information compiled for law enforcement purposes that "could reasonably be expected to endanger the life or physical safety of any individual."  *Id.*

3

### 3.      Claim III

Defendant BOP received Plaintiff's FOIA/PA request #06-1739 on November 28,

2005.  *Id.* ¶ 8.  In his request, Plaintiff sought all documents contained in Defendant BOP's

psychological and psychiatric files related to Plaintiff with a date range of January 1, 2004

through November 28, 2005.  *Id.*  Defendant BOP searched its electronic Psychology Data

System ("PDS") using Plaintiff's inmate register number to locate responsive documents.

*Winter Declaration* [#53-2] at 9.  Defendant BOP released thirty-six pages to Plaintiff on

January 27, 2006, but chose to redact two pages pursuant to 5 U.S.C. § 552(b)(2)

("Exemption 2"), which protects information solely related to "internal personnel rules and

practices of an agency."  *Defendants' Motion* [#53], UF ¶ 9.  The redacted information

comprised one paragraph from the PDS document in which the author described the

subjective perception of another staff member and advised all ADX staff regarding future

interactions with Plaintiff.  *Id.* ¶ 10.

### 4.      Claim IV

Defendant BOP received Plaintiff's FOIA/PA request #06-6428 on May 15, 2006.

*Id.* ¶ 11.  In his request, Plaintiff sought copies of all mail sent to or from Plaintiff that had

also been copied by ADX staff.  *Id.*  Defendant BOP identified 495 pages of responsive

material by reviewing a file generated by the ADX Special Investigative Supervisor's ("SIS")

office, but declined to release any of these materials to Plaintiff.  *Id.* ¶¶ 12, 14.  In its August

10, 2006 response to Plaintiff, Defendant BOP asserted three exemptions to protect the

requested information from disclosure.  *Id.* ¶ 14.  In addition to Exemptions 2 and 7(F),

Defendant BOP cited 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), which protects

information compiled for law enforcement purposes, which, if released, "could reasonably

4

be expected to risk circumvention of the law" because the information describes "techniques and procedures for law enforcement investigations or prosecutions," or guidelines for such investigations or prosecutions.

### 5. Claim V

Defendant DOJ, through the Executive Office of the United States Attorneys ("EOUSA"), received Plaintiff's FOIA request #07-2195 on July 6, 2005. *Defendants' Motion* [#53], UF ¶ 16. In his request, Plaintiff sought all records maintained by the United States Attorney for the District of Colorado related to *United States v. Mark Jordan*, No. 04-cr-00229-LTB. *Id.* Plaintiff expressed a willingness to pay reproduction fees up to a maximum of fifty dollars for the requested materials. *Id.* EOUSA informed Plaintiff of the regulatory reproduction fee structure and reproduction fee waiver procedures pursuant to 28 C.F.R. §§ 16.11 and 16.3(c), respectively. EOUSA proceeded to identify at least five boxes of responsive documents, each containing between 2,000 and 4,000 pages. *Id.* ¶ 18. In addition, EOUSA identified 3,000 potentially responsive pages related to Plaintiff's appeal and 3,000 potentially responsive pages related to quashing subpoenas. *Id.* In an attempt to avoid reproduction fees, Plaintiff requested that EOUSA provide the responsive information in CD-ROM format. *Id.* ¶ 19. EOUSA responded in a letter dated December 3, 2007 that the requested records did not exist in a format readily reproducible onto CD-ROM, and that EOUSA required an advance fee payment of $250 to continue processing FOIA request #07-2195. *Id.* ¶ 20. Plaintiff appealed the EOUSA's determinations, which the Office of Information and Privacy ("OIP") affirmed. *Id.* ¶ 21. To date, Plaintiff has not paid the advance fee or reformulated his FOIA request #07-2195 to reduce the estimated reproduction fee. *Id.* ¶ 22.

5

### 6.    Claim VI

Defendant BOP received Plaintiff's FOIA request #07-25787 on January 11, 2007. *Id.* ¶ 23.  In his request, Plaintiff sought copies of all telephone records for all telephone calls placed by Plaintiff while incarcerated at FCI-Englewood, Colorado between May 1, 2004 and April 15, 2006.  *Id.*  On January 31, 2007, Defendant BOP indicated in a letter to Plaintiff that no responsive records were available because audiotapes and digital recordings of Plaintiff's telephone conversations had been overwritten pursuant to BOP regulations and policies, and no paper transcripts could be identified in other BOP or ADX files.  *Id.* ¶¶ 24-25; *Supplemental Affidavit* [#71-2] at 8-9.  Defendant BOP then searched its telephone records system using Plaintiff's inmate register number, generating a single page of transactional data that the agency released to Plaintiff on April 3, 2008. *Id.* ¶ 26.

### 7.    Claim VII

Defendant BOP received Plaintiff's FOIA/PA request #06-0513 on October 19, 2005. *Id.* ¶ 27.  In his request, Plaintiff sought all documents related to all claims filed by Plaintiff against Defendant BOP pursuant to the Federal Tort Claims Act ("FTCA") since January 1, 1999.  *Id.*  Defendant BOP queried its electronic tort claims database, using Plaintiff's name to identify three responsive files.  In a letter dated December 15, 2005, Defendant BOP agreed to release 174 pages of responsive material, but declined to issue thirty-eight additional pages pursuant to various FOIA exemptions.  *Id.* ¶ 29.  Plaintiff appealed this decision to the OIP on January 5, 2006.  *Id.*  Approximately two years later, on December 5, 2007, OIP remanded FOIA request #06-0513 to Defendant BOP for further processing. *Id.*  Defendant BOP subsequently released the thirty-eight withheld pages, but redacted several of those pages pursuant to Exemptions 2, 7(E) and 7(F), as well as 5 U.S.C. §

552(b)(5) and (7)(C) ("Exemption 5" and "Exemption 7(C)").  *Id.* ¶¶ 30-45.

Pursuant to Exemption 2, Defendant BOP redacted the following three items:  (1) numbers listed for inmate base counts; (2) portions of the ADX Daily Assignment Rosters; and (3) locations, dates, and times of area searches conducted at ADX.  *Id.* ¶¶ 30-33. Plaintiff does not contest redaction of the information related to item 3, ADX area searches. *Response* [#55] at 19

Pursuant to Exemption 5, which protects legally privileged "inter-agency or intra-agency memorandums or letters," Defendant BOP redacted the following information:  (1) a list of items requested by a BOP Supervisory Attorney in a letter to an Associate Warden seeking assistance in investigating a tort claim; (2) the subjective legal opinion and conclusion of a paralegal in a memorandum related to a tort claim; (3) a two-sentence recommendation from a BOP Supervisory Attorney to BOP North Central Regional Counsel regarding settlement of an administrative claim; (4) the subjective legal opinion of a legal intern provided to the BOP Assistant Regional Counsel, which analyzed the merits of a tort claim; (5) a paralegal's opinion regarding staff actions and conclusion regarding a tort claim in a memorandum related to a tort claim; (6) a BOP Lieutenant's opinion in a memorandum written to a Supervisory Attorney related to a tort claim; and (7) a BOP Lieutenant's recommendation of specific action to be taken on a tort claim contained in a memorandum written to a Supervisory Attorney.  *Id.* ¶¶ 34-40.  Plaintiff does not dispute the agency's redaction of legal opinions and conclusions listed in items (3), (4), (6), or (7).  *See Response* [#55] at 17-21.

Pursuant to Exemption 7(C), which exempts information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted

invasion of personal privacy," Defendant BOP redacted the following three items:  (1) names of individual ADX staff members on the Daily Assignment Rosters; (2) names and register numbers of ADX inmates, together with associated personal information including their movement within ADX and their medical status as recorded in ADX log book pages; and (3) names and register numbers of ADX inmates and the housing status of one ADX inmate in a memorandum written by an ADX Senior Officer as part of the officer's law enforcement duties.  *Defendants' Motion* [#53], UF ¶ 43-45.

Finally, pursuant to Exemption 7(F), Defendant BOP redacted the names of two inmates temporarily released from housing for medical testing on the grounds that the testing possibly related to a larger investigation.  *Id.* ¶ 41.  Plaintiff concedes that this redaction is no longer in dispute.  *Response* [#55] at 21.

### 8.   Claim VIII

Defendant BOP received Plaintiff's FOIA/PA request #06-9422 on August 15, 2006. *Id.* ¶ 46.  In his request, Plaintiff sought copies of all documents related to Administrative Remedies 399657, 398950, and 394521.  *Id.*  Defendant BOP located the files containing all materials related to each Administrative Remedy by identifying the folders marked with the specific remedy numbers cited by Plaintiff.  *Declaration of Ron Hill ("Hill Declaration")* [#53-3] at 2.  Defendant BOP identified 155 pages of responsive information.  After initially miscounting the number of pages to be released and accidentally sending several completely redacted (i.e., blank) pages, Defendant BOP released twenty-nine pages to Plaintiff on or about May 30, 2008.  *Status Report* [#64] at 2-3.  Defendant BOP withheld the remaining pages comprising case law and internal BOP memoranda.  *Defendants' Motion* [#53], UF ¶ 47.  Of the twenty-nine released pages, Defendant BOP subjected eight

8

pages to redaction.  *Id.*  Upon reviewing the released materials, Plaintiff narrowed Claim VIII and now objects only to Defendant BOP's redaction of two statements made by Harrell Watts, Administrator of National Inmate Appeals, that contained BOP's legal position with respect to Administrative Remedies 398950 and 394521.  *Status Report* [#64] at 2. Defendant BOP redacted the statements, which Mr. Watts made in letters addressed to ADX Warden Ron Wiley, pursuant to Exemption 5.  *Id.*

Given the extensive facts in this case, surprisingly few of them remain disputed. Plaintiff generally challenges the legal arguments and conclusions contained in Defendants' statement of undisputed facts.  *See Response* [#55] at 1-5.  Plaintiff also generally challenges the sufficiency of the records searches related to Claims II, IV and VI.  *Id.* at 2-3.

In addition to these general challenges, Plaintiff disputes several specific facts in Defendants' Motion.  Pursuant to Claim V, Plaintiff challenges Defendant BOP's assertion that the records relating to *Unitea States v. Mark Jordan*, No. 04-cr-00229-LTB are not readily reproducible in CD-ROM format.  *Id.* at 3.  Pursuant to Claim VII, Plaintiff raises three challenges.  First, Plaintiff states that seven of the 174 pages allegedly released by Defendant BO.P in their entirety contain redactions unsupported by declarations or legal arguments.  *Id.* at 3.  Second, Plaintiff claims that Defendant BOP failed to explain redactions of the ADX Lieutenant's Log made pursuant to Exemptions "low" 2[1] and 7(C). *Id.* at 4.  Finally, Plaintiff argues that portions of the Shakedown Log were redacted pursuant to Exemptions 7(C) and 7(F) without supporting declarations or legal arguments. *Id.*

---

[1] *See infra* Part III.B.2 for a detailed explanation of the "low" 2 and "high" 2 FOIA exemptions.

**B.      Procedural Background**

The parties agree that Claim I is moot with respect to FOIA issues, as Defendant BOP provided Plaintiff with unredacted copies of all requested documents as of January 15, 2009.  Furthermore, having resolved initial confusion related to Claim VIII disclosures, Plaintiff has narrowed Claim VIII and now objects only to Defendant BOP's Exemption 5 redactions of two letters written by Harrell Watts to ADX Warden Ron Wiley, which contain statements of BOP's position with respect to Administrative Remedies 398950 and 394521. Finally, Plaintiff appears to have narrowed Claim VII, based on the contents of his Response to Defendants' Motion.

## II.  Standard of Review

**A.      Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 Generally**

"FOIA claims are typically resolved on summary judgment . . . ." *Pub. Employees for Envtl. Responsibility, Rocky Mountain Chapter v. EPA*, 978 F. Supp. 955, 959 (D. Colo. 1997).  The purpose of a summary judgment motion is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the opposing party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the suit pursuant to the governing substantive law.  *Id.*

The movant must show the absence of a genuine issue of material fact. *Adler v.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).   When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.   After the movant has met its initial burden, the burden shifts to the opposing party to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).   The opposing party must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the opposing party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).   Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Finally, the Court must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)).   However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113

11

F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).   In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.   *See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### B.   Legal Standard in FOIA Cases

The Court has jurisdiction to review the FOIA and PA challenges raised in Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1331.   To promote transparency in government, Congress passed FOIA in 1966 to provide a public right of access to agency records.   *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225 (10th Cir. 2007).   Parties seeking to enforce their right to access records may do so through the federal courts.   *Id.* FOIA helps "to ensure an informed citizenry, vital to the functioning democratic society, needed to check against corruption and to hold the governors accountable to the governed."   *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).   However, rather than requiring disclosure of all government records, FOIA "permits access 'only to information that sheds light upon the government's performance of its duties.'"   *Audubon Soc'y v. U.S. Forest Serv.*, 104 F.3d 1201, 1203 (10th Cir. 1997) (quoting *Sheet Metal Workers Local No. 9 v. U.S. Air Force*, 63 F.3d 994, 997 (10th Cir. 1995)).   Thus, despite the strong policy favoring transparency, Congress created nine FOIA exemptions that allow agencies to withhold specific materials to avoid harming legitimate government interests. 5 U.S.C. § 552(b); *Trentadue*, 501 F.3d at 1225-26 (citing *Casad v. U.S. Dep't of Health & Human Servs.*, 301 F.3d 1247, 1250-51 (10th Cir. 2002)).   Of the nine exemptions, three are relevant to the case at bar.   Specifically, FOIA

> does not apply to matters that are --
> . . .
> (2) related solely to the internal personnel rules and practices of an agency;

. . .
(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
. . .
(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual . . . .

5 U.S.C. § 552(b).

When determining whether an exemption applies to a specific agency record, courts interpret the act broadly in favor of disclosure while narrowly construing its exemptions. *Info. Network for Responsible Mining v. BLM*, 611 F. Supp. 2d 1178, 1183-84 (D. Colo. 2009) ("*INFORM*") (citing *Trentadue*, 501 F.3d at 1226). The Obama Administration expressed its support of these tenets in a memorandum dated March 19, 2009 that instructed all heads of executive departments and agencies to approach FOIA requests with the presumption that "[i]n the face of doubt, openness prevails." *See Plaintiff's Supplement* [#60] at 4. Finally, because the Court is addressing a motion for summary judgment, I note that the agency asserting a FOIA exemption bears, at the outset, the burden of justifying nondisclosure. *Trentadue*, 501 F.3d at 1226 (citing *Alirez v. NLRB*, 676 F.2d 423, 425 (10th Cir. 1982)).

### III.  Analysis

A.    **Claim II**

1.    **Adequacy of the Agency Search**

13

To succeed on a motion for summary judgment in a FOIA case, an agency must show that it conducted a search for the requested agency records that is "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1983) (citation omitted); *see also INFORM*, 611 F. Supp. 2d at 1184. This burden rests with the agency because, in order to obtain summary judgment, the moving party must demonstrate a lack of genuine issues of material fact. *Weisberg*, 745 F.2d at 1485. While the search need not be exhaustive, "an agency 'cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'" *INFORM*, 611 F. Supp. 2d at 1184 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Because principles of reasonableness guide the Court's evaluation, the adequacy of an agency records search depends on the specific facts of each case. *Id.* Or, as Plaintiff correctly notes, "adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

Agencies may submit an affidavit, known as a "*Vaughn* index," to establish the reasonableness of a search, provided the index is "relatively detailed, nonconclusory, and submitted in good faith." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985). Such affidavits must reasonably lay out the scope and method of the agency records search. *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993); *Oglesby*, 920 F.2d at 68 (stating that a reasonably detailed affidavit "set[s] forth the search terms and type of search performed, and aver[s] that all files likely to contain responsive materials . . . were searched").

Pursuant to Claim II, Plaintiff requested a complete list of ADX staff names, along with their titles. As a result of its records search, Defendant BOP identified a single

14

responsive document: a six-page ADX staff roster.   Plaintiff argues that the agency's search was inadequate.  *Response* [#55] at 2, 10-11.  In its Reply, Defendant BOP argues that Plaintiff "provides no personal knowledge regarding how the search for the records was conducted" and asserts that Plaintiff's lack of such knowledge indicates that no genuine issue of fact exists with respect to the adequacy of the search.   Defendant BOP also incorrectly states that Plaintiff is not entitled to raise adequacy of the search as an issue since it was not identified in Plaintiff's Amended Complaint.  *Reply* [#56] at 1-2; *see also Weisberg*, 745 F.2d at 1485 (holding that, to obtain summary judgment in a FOIA case, part of an agency's burden of establishing the absence of genuine issues of material fact involves demonstrating the adequacy of its records search).

Defendant BOP's statements fall short of the legal requirements for establishing the adequacy of its records search.   Defendant BOP's *Vaughn* index states only that the agency undertook "a search to determine the location of any and all documents related to Plaintiff's request" and that "[t]he agency determined the only responsive document was the staff roster" for ADX.  *See Winter Declaration* [53-2] at 7.  These conclusory statements contain no detail and fail to establish the scope or method of the search.  *See Maynard*, 986 F.2d at 559; *Oglesby*, 920 F.2d at 68.   Although the single responsive document identified by Defendant BOP—a six-page ADX staff roster—clearly and efficiently responds to Plaintiff's FOIA request, such evidence does not allow the Court to conclude that Defendant BOP's search was adequate.  *See Trenerry v. Dep't of Treasury*, 986 F.2d 1430 (table) (10th Cir. Feb. 5, 1993) (unpublished decision) (reversing district court's grant of summary judgment because agency's affidavit was nondetailed and conclusory, despite the fact that the search produced documents that fully responded to plaintiff's records

15

request).

Defendant BOP's argument that Plaintiff has no personal knowledge of the scope or method of the search lacks merit. The same could be said of the Court. In fact, both Plaintiff and the Court lack such knowledge because of the deficiency of Defendant BOP's *Vaughn* index. The very purpose of the *Vaughn* index is to demonstrate Defendant BOP's personal knowledge of the scope and method of the search, and to assure the Court that the agency "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *Prison Legal News v. Lappin*, 603 F. Supp. 2d 124, 128 (D.D.C. 2009). Because of the shortcomings of Defendant BOP's *Vaughn* index, I conclude that Defendant BOP failed to show that it conducted a records search "reasonably calculated to uncover all relevant documents." *Weisberg*, 745 F.2d at 1485.

### 2. ADX Staff Roster

Notwithstanding the inadequacy of the *Vaughn* index, Defendant BOP asserts that Exemption 7(F) permits the withholding of the ADX staff roster because releasing the names and titles of all ADX employees to the general public could reasonably be expected to endanger the life or physical safety of the employees or other individuals. *Defendants' Motion* [#53] at 13. Plaintiff denies that this exemption applies to the list, arguing that Defendant BOP failed to show that it compiled the list for law enforcement purposes. *Response* [#55] at 11. Plaintiff also argues that existing BOP policies and federal case law require disclosure of the ADX staff roster. *Id.* at 11-12.

In order to justify withholding of information pursuant to any sub-part of Exemption 7, the requested information must have been compiled for law enforcement purposes. *See*

16

*Trentadue*, 501 F.3d at 1235; *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989).   Courts interpret "law enforcement purposes" to include enforcement of both criminal and civil law.   *See, e.g.*, *Rugiero v. DOJ*, 257 F.3d 534, 550 (6th Cir. 2001); *Rural Housing Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 81 & n.46 (D.C. Cir. 1974). Furthermore, records need not be tied to any specific investigation to qualify as law enforcement records.   *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (citing S. Rep. No. 98-221, at 23 (1983)).   Important to the case at bar, records originally developed for law enforcement purposes and later recompiled into a document not used for law enforcement still qualify for withholding under the series of exemptions covered by § 552(b)(7).   *FBI v. Abramson*, 456 U.S. 615, 631-32 (1982).

Here, Defendant BOP argues that it is a law enforcement agency and that its employees are law enforcement officers.   *Reply* [#56] at 2.   Accordingly, Defendant BOP asserts that its status as a law enforcement agency establishes the ADX staff roster as a *de facto* law enforcement document.   *Id.*   The United States District Court for the District of Columbia has identified the BOP as a law enforcement agency with the function of protecting inmates, staff, and the community.   *Butler v. BOP*, No. Civ.A. 05-643 JDB, 2005 WL 3274573, at *3 (D.D.C. Sept. 27, 2005) (unpublished decision).   *See generally* 18 U.S.C. § 4042.   Furthermore, the Federal Employee's Retirement System defines all BOP employees as law enforcement officers.   5 U.S.C. § 8401(17)(D)(i).

Some courts have adopted *per se* rules that the investigatory records of law enforcement agencies "are inherently records compiled for 'law enforcement purposes' within the meaning of Exemption 7."   *Curran v. DOJ*, 813 F.2d 473, 475 (1st Cir. 1987) (citing *Irons v. Bell*, 596 F.2d 468, 475 (1st Cir. 1979)); *Mettetal v. DOJ*, No. 2:04-CV-410,

2006 WL 2589003, at *4 (E.D. Tenn. Sept. 7, 2006) (unpublished decision) (citing *Rugiero*, 257 F.3d at 550). The Tenth Circuit recently declined to adopt such a *per se* rule in relation to a different agency, but did so only because the court "harbor[ed] significant doubts as to whether the [agency in question—the Integrity Committee—was] a law enforcement agency . . . ." *Trentadue*, 501 F.3d at 1235. The Court has no doubt that BOP is, indeed, a law enforcement agency. As such, and as is consistent with the holding of other courts, I find that BOP records are inherently compiled for law enforcement purposes. *See Butler*, 2005 WL 3274573, at *3. Furthermore, ADX personnel are hired to enforce the law. Therefore, I find that the personnel records contained in the ADX staff roster were compiled for law enforcement purposes.

Finally, the Court addresses the issue of whether disclosure of the ADX staff roster could reasonably be expected to endanger the life or physical safety of any individual. Despite the general policy of narrowly construing FOIA's exemptions, the statutory language of Exemption 7(F) urges broad application to a wide range of individuals. 5 U.S.C. § 552(b)(7)(F). The term "any individual" encompasses not only the ADX employees listed on the staff roster, but also their families, friends, and even the general public. *See, e.g.*, *L.A. Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 898-900 (C.D. Cal. 2006) (applying Exemption 7(F) where disclosure of requested information could endanger the life or physical safety of many individuals); *Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Prot.*, No. 04-00377, 2006 WL 1826185, at *9 (D.D.C. June 30, 2006) (unpublished decision) ("*Herrick's Newsletter*") (finding that Exemption 7(F) extends to innocent third parties located in the vicinity of Customs officials, activities, or seized contraband). Because the personal safety

18

of an individual generally outweighs any public interest, a court addressing Exemption 7(F) need not necessarily engage in any balancing of interests. *See generally Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002) (calling the exemption "an absolute ban" against release of certain information).

Plaintiff cites *Maydak v. DOJ*, 362 F. Supp. 2d 316 (D.D.C. 2005) for the proposition that Defendant BOP should be ordered to release the ADX staff roster. In *Maydak*, the court reluctantly ordered BOP to disclose a staff list for a medium-security prison because BOP failed to establish, *inter alia*, that the list had been compiled for law enforcement purposes. *Id.* at 323 & n.5. However, this holding is an anomaly. Courts have routinely found a compelling need to protect the identities of law enforcement personnel where release of their names could compromise their personal safety or the safety of any other unspecified individual. *See, e.g.*, *Colon v. EOUSA*, No. Civ.A. 98-0180(PLF), 1998 WL 695631, at *6 (D.D.C. Sept. 29, 1998) (unpublished decision); *Jefferson v. Reno*, No. Civ.A. 96-1284(GK), 2001 WL 34373012, at *3 (D.D.C. Aug. 12, 2001) (unpublished decision).

Unlike the defendants in *Maydak*, Defendant BOP established in this case that the list of active ADX staff is entirely comprised of law enforcement records because all BOP staff are hired to enforce the law, and the BOP itself has a broad law enforcement mandate. *See Reply* [#56] at 2. There is no question that public disclosure of the names and titles of all ADX staff members could endanger the life or physical safety of any or all of the named employees. As noted in the *Vaughn* index, such a list could be used to threaten, manipulate or harm ADX staff members, ultimately compromising security at the nation's most secure federal prison. *Winter Declaration* [#53-2] at 7-8. Accordingly, I find that there is a compelling need to protect the personal safety of law enforcement

personnel.[2]

As such, the ADX staff roster qualifies for protection pursuant to Exemption 7(F). Therefore, I find that there is no genuine issue as to any material fact that the six-page ADX staff roster was properly withheld.  Furthermore, the Court believes that even a broader and more defined search for responsive records would not produce information that would defeat Defendant BOP's asserted FOIA exemption.

Accordingly, I **RECOMMEND** that Defendants' Motion be **GRANTED** with respect to the withholding of the six-page ADX staff roster.  I further **RECOMMEND** that Defendants' Motion be **DENIED** with respect to the adequacy of Defendant BOP's records search regarding Claim II.  I further **RECOMMEND** that the denial be **without prejudice** to Defendant BOP's renewal of the motion after it conducts a new search or creates affidavits or declarations demonstrating that the previous searches were reasonably calculated to uncover all relevant documents.

**B.    Claim III**

**1.    Adequacy of the Search**

Pursuant to Claim III, Plaintiff requests all documents in any BOP psychological or psychiatric file related to himself and dated on or after January 1, 2004.  *Defendants' Motion* [#53], UF ¶ 8.  Plaintiff does not contest the adequacy of the records search

---

[2] As a final matter, Plaintiff contends that BOP Program Statement No. 1351.05 identifies prison staff names and titles as "'public information' releasable under FOIA," and therefore Defendant BOP must release the names to comply with its own policy.  However, Plaintiff's narrow reading of the BOP Program Statement does not take into consideration that the policy's guidelines allow the BOP to "assert any applicable exemption to disclosure which is provided under the FOIA in 5 U.S.C. § 552(b) . . . ."  DOJ, *Bureau of Prisons Program Statement 1351.05, Release of Information* 4, *available at* http://www.bop.gov/policy/progstat/1351_005.pdf (Sept. 19, 2002).

pursuant to Claim III. *See Response* [#55] at 12-13. To identify responsive records, Defendant BOP searched its computerized PDS database, using Plaintiff's inmate register number and the relevant date range as search terms. *Winter Declaration* [#53-2] at 9. The query identified thirty-six pages of responsive material. *Id.* at 10. Based on these undisputed facts, I conclude that Defendant BOP's records search was "reasonably calculated to uncover all relevant documents." *Weisberg*, 745 F.2d at 1485.

### 2.     Redacted PDS Notes

Exemption 2 allows agencies to withhold information "solely related to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). As a threshold matter, the agency must demonstrate that it uses the information for predominantly internal purposes. *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting *Crooker v. ATF*, 670 F.2d 1051, 1073 (D.C. Cir. 1981)). Use of information is not internal if it constitutes "secret law"; that is, if it "regulate[s] activities among members of the public" or "set[s] standards to be followed by agency personnel in deciding whether to take action affecting members of the public." *Cox v. DOJ*, 601 F.2d 1, 5 (D.C. Cir. 1979), *overruled on other grounds by Crooker*, 670 F.2d at 1074 n.60.

Once the threshold requirement is met, the agency may withhold two categories of information: trivial matters that are not of genuine public interest (known as Exemption "low" 2) or matters that, if disclosed, could result in circumvention of applicable statutes or agency regulations (known as Exemption "high" 2). *Schiller*, 964 F.2d at 1207 (citing *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990)); *Founding Church of Scientology v. Smith*, 721 F.2d 828, 829-31 & n.4 (D.C. Cir. 1983) (citations omitted).

Exemption "low" 2 allows an agency to withhold internal information that would be

an administrative burden to locate and disclose, if release of the information is not justified by any genuine public interest. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976). While courts have allowed agencies to withhold a wide variety of information pursuant to Exemption "low" 2, such information must either constitute an internal rule or practice of the agency or shed significant light on an internal rule or practice to qualify for the exemption. *Schwaner*, 898 F.2d at 797; *see also DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989) (stating public interest in an agency record depends on the degree to which it sheds light on agency action). Thus, Exemption "low" 2 is reserved for insignificant matters such as lists of internal telephone or facsimile numbers, e-mail addresses, codes and account numbers, nonsubstantive cover letters, and other trivialities. *See Coleman v. Lappin*, 607 F. Supp. 2d 15, 21 (D.D.C. 2009) (BOP telephone and facsimile numbers); *Keys v. Dep't of Homeland Sec.*, 510 F. Supp. 2d 121, 127-28 (D.D.C. 2007) (secret service e-mail addresses); *Singh v. FBI*, 574 F. Supp. 2d 32, 44 (code numbers); *Nix v. United States*, 572 F.2d 998, 1005 (4th Cir. 1978) (file numbers, routing slips and cover letters).

Conversely, Exemption "high" 2 applies if the information requested is "predominantly internal" in nature and disclosure of the information "significantly risks circumvention of agency regulations or statutes." *Crooker*, 670 F.2d at 1073-74. Notably, the existence of a public interest in the requested information must generally cede in the context of Exemption "high" 2. *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1036 (N.D. Cal. 2005). Pursuant to this exemption, a wide variety of materials have been recognized as "predominantly internal; most significantly, the District Court for the District of Columbia has found that guidelines for maintaining prison security qualify as "predominantly internal"

22

materials. *Miller v. DOJ*, No. 87-0533, 1989 WL 10598, at *1-2 (D.D.C. Jan. 31, 1989) (unpublished decision).  Similarly, courts have found that records detailing prison security measures also meet the second requirement that disclosure of the information would "significantly risk circumvention of agency regulations or statutes."  *See Cox*, 601 F.2d at 4-5; *Jimenez v. FBI*, 938 F. Supp. 21, 27 (D.D.C. 1996).

The Tenth Circuit has yet to apply Exemption "high" 2 in favor of an agency decision to withhold records.  In a recent case, the Tenth Circuit required the agency to show a strong connection to personnel rules or practices to assert Exemption "high" 2.  *Audubon Soc'y*, 104 F.3d at 1204 (citing *Jordan v. DOJ*, 591 F.2d 753, 764 (D.C. Cir. 1978)) ("The phrase 'internal personnel rules' and 'practices of an agency' should not be read disjunctively; 'internal personnel' modifies both 'rules' and 'practices'").[3]  Because the requested information in *Audubon Society* failed to meet the Exemption 2 threshold requirement of relating to an internal personnel practice of the Forest Service, the Tenth Circuit did not reach the issue of whether to adopt and apply Exemption "high" 2.  *Id.*  Thus, although the Tenth Circuit left open the possibility of applying the exemption, it chose not to do so in *Audubon Society*.  However, district courts within the Tenth Circuit have recognized the application of the exemption.  *See generally Living Rivers, Inc. v. U.S. Bureau of Reclamation*, 272 F. Supp. 2d. 1313, 1317-18 (D. Utah 2003) (applying Exemption "high" 2 but finding inundation maps insufficiently related to Bureau of Reclamation personnel rules or practices to qualify); *Maricopa Audubon Soc'y v. U.S.*

---

[3] This decision relied on the reasoning in *Jordan,*  which had been abrogated by the District of Columbia Circuit Court of Appeals prior to the Tenth Circuit's decision in *Audubon Society.  See Crooker*, 670 F.2d at 1075.

*Forest Serv.*, 923 F. Supp. 1436, 1441 (D.N.M. 1995) (performing analysis pursuant to Exemption "high" 2, but holding that owl habitat maps are insufficiently related to Forest Service rules or procedures).

In the case at bar, Defendant BOP generically invoked Exemption 2 to redact one paragraph from Plaintiff's PDS file. *Defendants' Motion* [#53] at 14. The redacted paragraph comprised notes in which the author included the subjective opinion of another staff member; the notes also "advised all staff regarding appropriate actions to take with regard to the Plaintiff in the future." *Id.* Defendant BOP appears to conflate the "high" 2 and "low" 2 Exemptions. Defendants' Motion and *Vaughn* index assert that disclosure of the redacted information could allow the Plaintiff to circumvent agency regulations, clearly echoing the "high" 2 standard. *Winter Declaration* [#53-2] at 10. However, in their Reply, Defendants recite the "low" 2 standard, claiming that the redacted notes are not the type of information in which the public could be expected to have an interest. *Reply* [#56] at 3. The Court will address both aspects of Exemption 2. Plaintiff contends that the redacted material does not pertain solely to internal BOP personnel rules or practices, but directly pertains to Plaintiff. *Response* [#55] at 13. Additionally, Plaintiff argues that the redacted material "appears to constitute 'secret law,' that must be disclosed." *Id.*

The statements recorded in Plaintiff's PDS file advising ADX staff of appropriate actions to take with regard to the Plaintiff contain "primarily internal" information. *See Miller*, 1989 WL 10598, at *1-2 (holding that guidelines for maintaining prison security are primarily internal). The advice neither "regulate[s] activities among members of the public" nor "set[s] standards to be followed by agency personnel in deciding whether to proceed against or to take action affecting members of the public." *Cox*, 601 F.2d at 5. Rather,

24

Defendant BOP's arguments suggest that the statements contain a nonbinding recommendation directed solely to ADX staff regarding implementation of appropriate security measures when interacting with Plaintiff. The fact that the recommendation affects Plaintiff does not detract from its primarily internal purpose. *Crooker*, 670 F.2d at 1073-74 (stating that all internal rules and practices of an agency have some effect on the public-at-large, but this minor ripple effect does not detract from their primarily internal nature). Additionally, the recommendation does not appear to bind Defendant BOP's discretion with respect to regulating the activities of the public or even Plaintiff, strongly controverting the assertion that the redacted information constitutes "secret law." *See Cox*, 601 F.2d at 5. Based on the foregoing considerations, I conclude that the redacted notes contain primarily internal information, thereby meeting the threshold requirement of both Exemptions "low" 2 and "high" 2.

Despite the primarily internal nature of the redacted PDS notes, I find that they cannot be protected from disclosure by Exemption "low" 2 because they are insufficiently trivial. Unique prison security measures are not trivial matters in which the public holds no genuine interest. *See Rose*, 425 U.S. at 369-70. Unlike the telephone numbers and computer codes protected by Exemption "low" 2, prison security measures invite constitutional scrutiny pursuant to the Eighth Amendment. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312 (1986). In any event, other courts have protected matters affecting prison security pursuant to Exemption "high" 2 as matters that could significantly risk circumvention of the law. *See, e.g.*, *Cox*, 601 F.2d at 4-5; *Kuffel v. BOP*, 882 F. Supp. 1116, 1123 (D.D.C. 1995). Because I find that Defendant BOP has shown that disclosing such information to Plaintiff could significantly risk circumvention of BOP regulations or applicable statutes, I

25

conclude that the information is protected from disclosure pursuant to Exemption "high" 2. *See Schwarz v. U.S. Dep't of Treasury*, 131 F. Supp. 2d 142, 150 (D.D.C. 2000) (protecting records documenting personal characteristics used to evaluate the threat level presented by an individual). Therefore, I find that there is no genuine issue as to any material fact that these records were properly withheld. Accordingly, I **RECOMMEND** that Defendants' Motion be **GRANTED** with respect to Claim III.

### C.   Claim IV

#### 1.   Adequacy of the Search

Pursuant to Claim IV, Plaintiff seeks copies of all mail sent to or from Plaintiff and photocopied by the staff at ADX. *Defendants' Motion* [#53] at 4. Defendant BOP identified responsive information in the SIS office at ADX. *Id.* Plaintiff denies that "the records at issue all derive from [the SIS] files." *Response* [#55] at 3. The Court interprets Plaintiff's statement as challenging the adequacy of Defendant BOP's records search.

When ADX staff place an inmate on mail monitoring, "relevant mail [is] copied and maintained by staff from the . . . SIS Office." *Supplemental Affidavit* [#71-2] at 2. The mail room at ADX does not independently maintain copies of mail. *Id.* In its *Vaughn* index, Defendant BOP indicates that it located and reviewed the SIS files related to Plaintiff, identifying 495 pages of responsive material. *Winter Declaration* [#53-2] at 12. Defendant BOP used Plaintiff's name and SIS information file number to locate the appropriate records for review. *Supplemental Affidavit* [#71-2] at 3. Since the SIS office is the sole repository of photocopied inmate correspondence at ADX, I conclude that Defendant BOP conducted its records search in a manner "reasonably calculated to uncover all relevant

documents." *Weisberg*, 745 F.2d at 1485.

### 2.    The SIS File Materials

Defendant BOP asserts Exemptions 2, 7(E), and 7(F) to support nondisclosure of photocopied correspondence in Plaintiff's SIS file. *Defendants' Motion* [#53] at 4. However, the weight of Defendant BOP's argument pertains to Exemption 7(E), which categorically protects information compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations or prosecutions, . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Exemption 7(E) incorporates the threshold requirement that, to be eligible for protection, records withheld must have been compiled for law enforcement purposes. *See id.* § 552(b)(7); *see also supra* Part III.A.2 (explaining the legal standard applied to the threshold requirement in relation to Exemption 7(F)). Connection to specific investigations is not required for records to meet the threshold requirement. *Tax Analysts*, 294 F.3d at 79. Here, Defendant BOP states that SIS officials select inmate mail correspondence for photocopying in the course of identifying potential violations of BOP regulations and policies, as well as potential criminal violations. *Reply* [#56] at 4. There is no reasonable dispute that Defendant BOP engages in such actions for law enforcement purposes.

The protections of Exemption 7(E) are designed to maintain the efficacy of law enforcement where public knowledge of techniques and procedures could lead to circumvention of the law. As such, the exemption does not extend to information that is well known to the public. *Rugiero*, 257 F.3d at 551. However, the details or specific application of well-known techniques and procedures merit protection where disclosure

could diminish or eliminate their effectiveness.  *See Pray v. DOJ*, 902 F. Supp. 1, 4 (D.D.C. 1995), *aff'd in part, denied on other grounds in part*, No. 95-5383, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996) (concluding that release of information about particular investigative techniques and their effectiveness could enable criminals to neutralize their effectiveness). Exemption 7(E) applies not only to techniques and procedures for law enforcement investigations or prosecutions, but also to any materials that *reflect* such techniques and procedures.  *See Williston Basin Interstate Pipeline Co. v. FERC*, No. 88-0592-LFO, 1989 WL 44655, at *1-2 (D.D.C. Apr. 17, 1989) (unpublished decision) (applying Exemption 7(E) to an audit report).  Finally, an agency asserting this exemption need not prove that disclosure of contested information would, in fact, lead to circumvention of agency regulations or laws.  *See Herrick's Newsletter*, 2006 WL 1826185, at *7 (noting that agency must only show that disclosure may be reasonably expected to risk circumvention).

Because the SIS investigates potential violations of federal laws committed within ADX, Defendant BOP argues that disclosing the body of Plaintiff's correspondence scrutinized by the SIS would reveal the technique used to identify such violations, allowing an inmate to circumvent BOP policies.  *Defendants' Motion* [#53] at 14.  Plaintiff argues that release of the requested records would neither disclose techniques or procedures used for law enforcement investigations or prosecutions, nor risk circumvention of the law because the technique of photocopying prison correspondence is already well known by the public.  *Response* [#55] at 14.

Although it is widely known that Defendant BOP monitors inmate correspondence in the course of investigating illegal activity, Defendant BOP indicates that, in the course of reviewing prison mail, only certain items of correspondence are photocopied and

28

maintained in the SIS file.  *Reply* [#56] at 4.  Therefore, Defendant BOP argues that the release of Plaintiff's large body of correspondence would reveal "[t]he technique and procedure for determining which items [are] of interest . . . ."  *Winter Declaration* [#53-2] at 13.  Thus, Defendant BOP applies Exemption 7(E) not to each individual item of Plaintiff's correspondence, but rather to the body of Plaintiff's photocopied correspondence as a whole.  In effect, Defendant BOP attempts to avoid disclosure of its investigatory technique by preventing access to the results of the technique's application.  *See Williston Basin*, 1989 WL 44655, at *1-2; *see also Pray*, 902 F. Supp. at 4 (upholding agency  withholding of an "accomplishment report" that a criminal could use to "correlat[e] the use of a particular investigative technique with its corresponding accomplishment"); *Maydak*, 362 F. Supp. 2d at 320 (same).

The Court is not required to make any particular finding of harm or circumvention of the law when evaluating applications of Exemption 7(E) involving law enforcement techniques.  *Herrick's Newsletter*, 2006 WL 1826185, at *7.  Because the monitoring of inmate correspondence is important to law enforcement both inside and outside of our nation's prisons, I conclude that ordering the release of photocopied mail contained in Plaintiff's SIS file would disclose techniques for law enforcement investigations that could reasonably be expected to risk circumvention of the law.  *See* 5 U.S.C. § 552(b)(7)(E).  As such, I find that there is no genuine issue of material fact that these records were properly withheld.  Accordingly, I **RECOMMEND** that Defendants' Motion be **GRANTED**.[4]

**D.    Claim V**

---

[4] Because I find that Defendant BOP properly withheld these documents pursuant to Exemption 7(E), I need not address the parties' arguments pursuant to Exemptions 2 or 7(F).

Pursuant to Claim V, Plaintiff seeks all records and information maintained by the United States Attorney for the District of Colorado pertaining to *United States v. Mark Jordan*, No. 04-cr-00229-LTB.  *Defendants' Motion* [#53] at 14.  Defendant DOJ located at least five boxes of responsive materials, comprising between 16,000 and 26,000 pages of paper documents.  *See id.*  Defendant DOJ properly notified Plaintiff of the anticipated reproduction cost, advised Plaintiff of the agency's fee waiver procedures, and provided Plaintiff with a form to assist with his request reformulation.  *Declaration of John F. Boseker* [#53-4] at 2-3 ("*Boseker Declaration*"); *see also* 28 C.F.R. § 16.11(e).  However, rather than reformulating his request or applying for a fee waiver, Plaintiff requested that Defendant DOJ provide the relevant records on CD-ROM "[t]o obviate photocopying fees . . . ." *Boseker Declaration* [#53] at 11.

FOIA allows an agency presented with a records request to charge reasonable fees for locating and duplicating responsive documents.  5 U.S.C. § 552(a)(4)(A).  To process FOIA requests, Defendant DOJ charges duplication fees for paper documents at a rate of ten cents per page.  28 C.F.R. § 16.11(c)(2).  When DOJ determines that responding to a records request will result in costs exceeding $25, the agency must notify the requester and provide an opportunity to reformulate the scope of the request in coordination with DOJ to reduce costs.  *Id.* § 16.11(e).  Finally, DOJ regulations permit the collection of advance fees up to the full amount of the estimated total search and duplication cost if the anticipated cost exceeds $250.  *Id.* § 16.11(i)(2).   Until the requester pays either the anticipated total fee or the advance fee determined by DOJ, "the request shall not be considered received and further work will not be done on it . . . ."  *Id.* § 16.11(i)(4).

Plaintiff maintains that he is entitled to receive the results of his request on CD-ROM

30

free of charge. *Response* [#55] at 15-16.  In support of his position, Plaintiff cites 5 U.S.C. § 552(a)(3)(B), which requires an agency to "provide the record in any form or format requested . . . if the record is readily reproducible by the agency in that format."  Plaintiff also references a FOIA Update from 1997, which states that "in almost all cases, an agency will be able to readily reproduce any existing form or format of a record for which a requester expresses a preference."  DOJ, *FOIA Update*, Vol. XVIII, No. 1, at 3, *available at* http://www.usdoj.gov/oip/foia_updates/Vol_XVIII_1/page3.htm (Winter 1997).

Defendant DOJ has clearly indicated that the responsive files in this case do not exist in a format readily reproducible onto CD-ROM.  *Defendants' Motion* [#53] at 15.  The documents exist on paper, not in electronic format.  *Id.*  Therefore the duplication fees for paper documents apply regardless of the final format of the duplicated documents.  *See* 28 C.F.R. § 16.11(c)(2).  Based on the fees charged by Defendant DOJ for duplication of paper records pursuant to agency regulations, DOJ reasonably anticipated that the total cost of duplicating thousands of pages in response to Plaintiff's FOIA request at a rate of ten cents per page would exceed $250.  Because Defendant DOJ is entitled to collect advance fees when anticipated reproduction costs exceed $250, and because Plaintiff failed to pay the fee or reformulate his request, DOJ was not required to respond to Plaintiff's FOIA/PA request #07-2195.  *See* 28 C.F.R. § 16.11(i)(2).  Therefore, I find that there is no genuine issue as to any material fact that these records were properly withheld.  Accordingly, I **RECOMMEND** that Defendants' Motion be **GRANTED** with respect to Claim V.

    **E.**    **Claim VI**

### 1.    Adequacy of the Search

Pursuant to Claim VI, Plaintiff requests a copy of all telephone records for all calls that he placed while incarcerated at FCI-Englewood, Colorado between May 1, 2004 and April 15, 2006. *Winter Declaration* [#53-2] at 14.  Pursuant to BOP regulations, the relevant audio recordings have been overwritten.  *Id.* at 15; *see also* 71 Fed. Reg. 9606-02 (Feb. 24, 2006).  However, using Plaintiff's inmate register number, Defendant BOP searched for appropriate transactional data in its TruFone telephone system.  *Winter Declaration* [#53-2] at 16.  Defendant BOP provided the one-page printout of transactional data to Plaintiff in full.

Plaintiff challenges the adequacy of the BOP records search in his Response, arguing that the agency failed to demonstrate personal knowledge regarding the scope and method of the search.  *Supplemental Response* [#72] at 2.  Plaintiff also argues that Defendant BOP improperly limited its records search to audio files, neglecting possible written transcripts that may exist pursuant to existing BOP regulations.  *Response* [#55] at 16.  Plaintiff cites 71 Fed. Reg. 9606-02, which establishes regulations for maintenance of BOP telephone records.  *Id.* at 17.  While the Federal Register supports Defendant BOP's position that audiotape and digital recordings are overwritten after six months, the provision also indicates that BOP retains other automated telephonic records on magnetic media for six years, and paper records for thirty years after the expiration of the sentence of the inmate whose activity generated the record. 71 Fed. Reg. 9606-02.  Plaintiff asserts that magnetic or paper transcripts may be found in the SIS files or in BOP legal department files but that Defendant BOP failed to search for these documents.  *Response* [#55] at 16. Additionally, Plaintiff contends that Defendant BOP failed to search an earlier telephone

system database, which he says Defendant BOP utilized as a predecessor to the TruFone systems through October 2005, covering a substantial portion of the dates asserted in Plaintiff's FOIA request. *Id.*

Defendant BOP comprehensively searched its telephone records, but was unable to locate responsive materials. As an initial matter, Defendant BOP's affidavits alone suffice to demonstrate personal knowledge of the records searches conducted. *Maynard*, 986 F.2d at 560; *Lahr v. NTSB*, 569 F.3d 964, 990 (9th Cir. 2009) (citing *Carney v. DOJ*, 19 F.3d 807, 814 (2d Cir. 1994)) . By the time Plaintiff requested telephone records, all recorded telephone conversations had been overwritten pursuant to 71 Fed. Reg. 9606-02. *Supplemental Affidavit* [#71-2] at 6-7. In addition to searching all existing analog and digital audio recordings, Defendant BOP also searched for transcripts of Plaintiff's telephone conversations in the SIS AIMS database and investigative files. *Id.* at 8-9. Defendant BOP states that "all possible locations of phone records sought were thoroughly searched." *See Oglesby*, 920 F.2d at 68 (stating that reasonably detailed affidavits "aver[] that all files likely to contain responsive materials were searched"). Defendant BOP maintains that no responsive records could be located. To the extent that Plaintiff continues to aver that recordings of his telephone conversations might exist somewhere, *Supplemental Response* [#72] at 2-3, the Court finds that Plaintiff's mere speculation as to the existence of additional responsive materials is insufficient to establish a genuine issue with respect to the adequacy of Defendant BOP's records search. *See Maynard*, 986 F.2d at 560 (noting that affidavit cannot be rebutted by pure speculation). Therefore, I find that there is no genuine issue as to any material fact that Defendant BOP conducted its records search in a manner reasonably calculated to uncover all relevant documents. *Weisberg*, 745 F.2d

33

at 1485.  Accordingly, I **RECOMMEND** that Defendants' Motion be **GRANTED** with respect to Claim VI.

### F.    Claim VII

#### 1.    Adequacy of the Search

Pursuant to Claim VII, Plaintiff seeks all documents related to all claims filed by Plaintiff against Defendant BOP pursuant to the Federal Tort Claims Act ("FTCA") since January 1, 1999.  *Winter Declaration* [#53-2] at 16.  Defendant BOP searched its nationwide electronic tort claims database, using Plaintiff's name to identify responsive material.  *Id.* at 18.  The agency located three relevant claim files containing a total of 212 pages.  *Id.*  Of the 212 pages located, Defendant BOP released 174 to Plaintiff.  *Id.*

Plaintiff does not challenge the adequacy of the records search under Claim VII. Defendant BOP's *Vaughn* index adequately details the scope and method of the agency records search, including the locations searched and the search terms applied.  *Maynard*, 986 F.2d at 559 (affidavits must reasonably lay out the scope and method of the agency records search); *Oglesby*, 920 F.2d at 68 (a reasonably detailed affidavit "set[s] forth the search terms and type of search performed . . . .").  Therefore, I conclude that Defendant BOP conducted its search in a manner reasonably calculated to uncover all relevant documents.  *Weisberg*, 745 F.2d at 1485.

#### 2.    Factual Disputes

The Court notes that Plaintiff disputes several assertions of fact contained in Defendants' Motion with respect to Claim VII.  First, Plaintiff contends that, of the 174 pages released by Defendant BOP pursuant to FOIA request #06-0513, BOP redacted

seven pages without explanation.  *Response* [#55] at 3.  However, Plaintiff does not substantiate this claim with specific evidence that such redactions exist.[5]  *Id.*  The Court will not act as Plaintiff's counsel, fabricating a factual dispute where none exists.  *See Whitney*, 113 F.3d at 1173-74 (asserting that the Court should not supply factual allegations to round out a plaintiff's complaint).  To the extent that other pleadings exist which speak to this issue, Plaintiff has not directed the Court to consider them.  *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("[S]ufficient evidence . . . must be identified by reference to a [pleading].  Without a specific reference, 'we will not search the record in an effort to determine whether there exists dormant evidence . . . .'" (citation omitted)).  Accordingly, I decline to address this issue further.

Second, Plaintiff contends that Defendant BOP redacted three pages of the Lieutenant's Log pursuant to Exemptions 2 and 7(C) without explanation.  *Response* [#55] at 4.  Contrary to Plaintiff's contention, my review of the relevant pleadings reveals a thorough explanation of the redactions.  *See Defendants' Motion* [#53] at 16, 18.  Third, Plaintiff contends that Defendant BOP failed to address certain redactions from the Shakedown Log pursuant to Exemptions 7(C) and 7(F), and that BOP redacted one block of information from the Shakedown Log without asserting any exemption.  *Id.*  Although I found Plaintiff's contention to be tenuous, I sought and received additional briefing from the parties on the Shakedown Log redactions, which are discussed below.[6]

---

[5] The Court notes that, in other instances where Plaintiff disputes specific, unexplained redactions, Plaintiff has provided copies of the redacted pages for review. Here, Plaintiff has not provided any evidence that would allow the Court to independently verify Plaintiff's claim that Defendant BOP redacted seven of the 174 pages that BOP claims it released in full.

[6] *See infra* Part III.F.3.d.

### 3.     Disputed FOIA Issues

Because Defendant BOP redacted a wide variety of information relevant to Claim VII, the Court addresses this claim by grouping redactions that assert common FOIA exemptions. However, the Shakedown Log is addressed separately. Additionally, as noted in the statement of undisputed facts, Plaintiff appears to have narrowed Claim VII by failing to challenge numerous redactions discussed in Defendants' Motion.[7]   In the context of summary judgment, Defendants carry the initial burden of demonstrating each "element of their defense by sufficient, competent evidence . . . ."   *In re Ribozyme Pharm., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  I find that Defendant BOP has initially proffered such evidence and satisfied its burden with respect to the relevant redactions and, therefore, the burden shifts to Plaintiff to raise a challenge.  Because Plaintiff chooses not to challenge several of Defendant BOP's redactions, he has failed to carry his burden of producing evidentiary materials to establish the existence of a genuine issue of material fact with respect to the undisputed redactions.  *Celotex*, 477 U.S. at 331.  Accordingly, the Court only addresses redactions to which Plaintiff raised specific objections in his Response to Defendants' Motion.

### a.     Exemption 2

As detailed in Claim III,[8] Exemption 2 protects matters "solely related to the internal personnel rules and practices of an agency."   5 U.S.C. § 552(b)(2).  Provided that the information sought by the requester is a primarily internal agency record, the agency may

---

[7] *See supra* Part I.A.7.

[8] *See supra* Part III.B.2.

withhold the information if it is not subject to "genuine and significant public interest" or if its release could significantly risk circumvention of agency regulations or statutes. *Rose*, 425 U.S. at 369-70 ("where the situation is not one where disclosure may risk circumvention of agency regulation, Exemption 2 is not applicable to matters subject to . . . a genuine and significant public interest"); *Schiller,* 964 F.2d at 1207 (quoting *Crooker*, 670 F.2d at 1073) ("Exemption 2 . . . applies to material 'used for predominantly internal purposes.'")

Defendant BOP asserts Exemption "low" 2 to justify its redaction of numbers listed for inmate base counts contained in the Lieutenant's Log and the Unit Log and argues that the public has no genuine interest in inmate base count numbers. *Defendants' Motion* [#53] at 16. Plaintiff counters that the public has an interest in prison overcrowding, as well as potential overstaffing at the BOP. *Response* [#55] at 19.

At the threshold, Defendant BOP uses the inmate base counts for "predominantly internal purposes." *See Schiller*, 964 F.2d at 1207 (holding that Exemption 2 applies to information used by an agency for "predominantly internal purposes") (citation omitted). Understandably, Defendant BOP must frequently account for each of the prisoners housed at ADX, and the base count numbers in this case provide internal verification of  the presence of all inmates. Furthermore, while the public may have an interest in prison overcrowding, the Court agrees with Defendant BOP that the public has no genuine interest in the ADX inmate base count as it relates to the internal personnel practice of accounting for all prisoners at ADX. *Schwaner*, 898 F.2d at 797 (stating that information that sheds insignificant light on rule or practice (such that the information is trivial) can be protected pursuant to Exemption "low" 2). The actual numbers of prisoners housed in each of the

37

institution's housing units does not provide the public with any necessary information regarding Defendant BOP's internal personnel rules or practices, and therefore does not "shed significant light" on the personnel practice of counting prisoners at the beginning and end of each guard shift. *Id.* Accordingly, I conclude that Defendant BOP properly redacted inmate base count numbers.

Defendant BOP also asserts Exemption "high" 2 to redact portions of the Daily Assignment Rosters that could reveal agency staffing patterns, leading to possible escape efforts, inmate disturbances, and potential harm to staff. *Defendants' Motion* [#53] at 16. Plaintiff concedes that the shift times are exempt pursuant to Exemption "high" 2, but argues that staffing patterns would only be revealed if Defendant BOP releases the shift times together with the names and the position titles of the staff members who filled the posts at those times. *Response* [#55] at 17. Plaintiff therefore contends that the names and titles of ADX staff members contained on the Daily Assignment Rosters must be disclosed. *Id.* at 18.

Plaintiff's argument amounts to a partial restatement of Claim II, in which Plaintiff requested a complete list of the names and titles of ADX staff members. The only difference is that here, Plaintiff merely demands a partial list. The ADX staffing schedule constitutes an internal BOP personnel rule or practice, even under the strict interpretation of the Tenth Circuit. *See Audubon Soc'y*, 104 F.3d at 1204 ("The phrase 'internal personnel rules' and 'practices of an agency' should not be read disjunctively; 'internal personnel' modifies both 'rules' and 'practices.'"). Here, Defendant BOP uses the ADX staffing schedule as an internal personnel practice to ensure that the facility is adequately staffed. Not only would disclosure of the requested information potentially jeopardize the

life or personal safety of the ADX staff as discussed in Claim II,[9] but it could also risk circumvention of agency regulations or applicable statutes because public or inmate knowledge of ADX staffing patterns could assist in escape efforts or facilitate other disturbances both inside and outside the prison walls.  *See Crooker*, 670 F.2d at 1073-74. Accordingly, the Court concludes that Defendant BOP properly redacted shift times, staff names, and staff position titles from the Daily Assignment Rosters pursuant to Exemption 2.

### b.    Exemption 5

Exemption 5 "excuses disclosure of 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.'"  *Trentadue*, 501 F.3d at 1226 (quoting 5 U.S.C. § 552(b)(5)).  Courts interpret this exemption as protecting information that would be privileged in the context of a civil proceeding.  *Id.*; *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Documents that merit protection pursuant to Exemption 5 "must be the product of a government agency, and must 'fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'"  *Stewart v. U.S. Dep't of the Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  The Supreme Court acknowledges that the attorney work-product privilege, which "covers information reflecting the mental processes of counsel" falls within Exemption 5.  *Stewart*, 554 F.3d at 1239 (citing *Klamath Water Users*, 532 U.S. at 8).  The attorney work-product privilege offers

---

[9] *See supra* Part III.A.2

sweeping protection to factual materials where their consideration reflects the thought process of an attorney. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Additionally, the privilege extends to materials prepared by nonattorneys who are supervised by attorneys. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). Litigation need not be imminent for the attorney work-product privilege to apply; rather, it must only be reasonably foreseeable. *Schiller*, 964 F.2d at 1208.

Defendant BOP relied upon Exemption 5 to redact numerous items contained in letters and memoranda related to Plaintiff's FTCA claims. *Defendants' Motion* [53] at 17-18. Based on Plaintiff's Response, only three redacted records remain at issue: a list of items requested by a BOP Supervisory Attorney in a letter to an Associate Warden seeking assistance in investigating a tort claim, as well as the opinions, conclusions, and recommendations of paralegals contained in two memoranda prepared for BOP Regional Counsel and the ADX attorney. *Response* [#55] at 18.

Plaintiff contends that the list of items requested by a BOP attorney fails to qualify for the attorney work-product privilege or Exemption 5 because it is purely factual. *Id.* In support of this position, Plaintiff relies on the Tenth Circuit's *Trentadue* decision, which he claims "rejected the argumen[t] that factual material may be exempt as privileged under (b)(5) on the theory that it may disclose attorney thought process." *Id.* However, *Trentadue* is inapposite because it discusses the deliberative process privilege, not the attorney work-product privilege. *Trentadue*, 501 F.3d at 1226-28. Here, the list of materials redacted from the ADX attorney's memo does not constitute fact, but rather falls squarely within the attorney work-product privilege because it reflects items that the ADX counsel considered potentially relevant to reasonably foreseen litigation. *See Stewart*, 554

40

F.3d at 1239 (citing *Klamath Water Users*, 532 U.S. at 8).  Additionally, the fact that a BOP attorney wrote the document conclusively qualifies it as "the product of a government agency."  *Id.*  In short, the redacted list of items falls within the protection of Exemption 5, and I conclude that Defendant BOP properly applied the exemption.  *Id.*

Next, Plaintiff challenges Defendant BOP's redaction of documents prepared by paralegals on the grounds that the attorney work-product privilege does not extend to nonattorneys.  *Response* [#55] at 18.  Here Plaintiff is plainly wrong.  As noted above, the work-product privilege includes information prepared by nonattorneys supervised by attorneys or at the request of attorneys.  *Nobles*, 422 U.S. at 238-39.  BOP paralegals prepared the memorandums in question at the direction of BOP Regional Counsel and the ADX attorney.  *Reply* [#56] at 7.  These memorandums also clearly represent the work product of Defendant BOP, a government agency.  *See Stewart*, 554 F.3d at 1239.  Therefore, they qualify for protection pursuant to Exemption 5.  *Id.*

Finally, BOP staff members prepared each of the memorandums in response to Plaintiff's already existing administrative tort claims, nullifying Plaintiff's assertion that the documents were not prepared in anticipation of litigation.  *Reply* [#56] at 8; *see Schiller*, 964 F.2d at 1208.  Based on the foregoing analysis, I conclude that Defendant BOP properly applied Exemption 5.

### c.    Exemption 7(C)

An agency may redact personal information contained in law enforcement records pursuant to Exemption 7(C), which protects information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  To qualify for this exemption, the information

in question must have been compiled for law enforcement purposes. *Trentadue*, 501 F.3d at 1235. The Supreme Court supports categorical withholding of third party identities contained in law enforcement records, particularly where the third party is the subject of the record itself or where disclosure may be harmful to him or her. *See Reporters Comm.*, 489 U.S. at 780; *DOJ v. Julian*, 486 U.S. 1, 9 (1988). The protection of third parties also covers, *inter alia*, identities of law enforcement agents, victims, and witnesses contained in law enforcement records. *Mack v. Dep't of the Navy*, 259 F. Supp. 2d. 99, 107-09 (D.D.C. 2003).

Generally, courts apply a balancing test when evaluating an agency's use of Exemption 7(C). Courts first identify the particular privacy interest at stake, then balance it against the public interest in disclosure of the agency record in question. *See, e.g.*, *Trentadue*, 501 F.3d at 1235-36 (balancing public interest against privacy concerns); *Albuquerque Publ'g Co. v. DOJ*, 726 F. Supp. 851, 855 (D.D.C. 1989) ("Our preliminary inquiry is whether a personal privacy interest is involved."). To overcome the privacy interest, the public interest must be "likely to contribute significantly to public understanding of the operations or activities of the government." *Trentadue*, 501 F.3d at 1236 (quoting *Reporters Comm.*, 489 U.S. at 775). Using the balancing test, many courts have protected the identities of law enforcement personnel. *See, e.g.*, *Manna v. DOJ*, 51 F.3d 1158, 1166 (3rd Cir. 1995); *Nix*, 572 F.2d at 1006.

Defendant BOP utilized Exemption 7(C) to protect two categories of information: (1) the names of ADX staff contained on the Daily Assignment Rosters and Lieutenant Logs; and (2) the names and personal information of inmates recorded in log book pages and in a memorandum written by an ADX Senior Officer. *Defendants' Motion* [#53] at 16, 18.

Defendant BOP claims that release of any of the contested information "would constitute an unwarranted invasion of privacy." *Id.* Defendant BOP also asserts that the public retains no interest in disclosure of this information. *Id.* Plaintiff counters with two arguments, stating first that Defendant BOP failed to establish that any of the records in question were compiled for law enforcement purposes, and second that none of the individuals possessed any cognizable privacy interest in the redacted information. *Response* [#55] at 17, 19; *Supplemental Response* [#72] at 5-6.

The Court has already addressed Defendant BOP's redaction of ADX staff names from the Daily Assignment Rosters, concluding that the information was properly withheld pursuant to Exemption "high" 2. The same is true for the Lieutenant Logs. These records also qualify for protection pursuant to Exemption 7(C) because they are compiled for the law enforcement purpose of maintaining ADX security, and public knowledge of the specific shifts worked by each employee fails to provide sufficient public insight into BOP operations to overcome the privacy interests involved. *See Trentadue*, 501 F.3d at 1235 (requiring document withheld pursuant to Exemption 7(C) to have been prepared for law enforcement purpose); *Nix*, 572 F.2d at 1006 (protecting privacy of federal employees, "even with respect to . . . [their] official duties").

As related to the redaction of inmate names, register numbers, and housing statuses recorded in log book pages and in a memorandum written by an ADX Senior Officer, I find that prison log books and officer reports inherently are records that are compiled for law enforcement purposes, as they document Defendant BOP's core law enforcement responsibility of protecting inmates, staff, and the community. *See* 18 U.S.C. § 4042. Having disposed of this threshold inquiry, the Court notes that the asserted privacy interest

"need only be more than *de minimis* to trigger the application of the balancing test to determine whether disclosure is permitted under FOIA." *AP v. U.S. Dep't of Defense*, 554 F.3d 274, 286 (2nd Cir. 2009). Plaintiff argues that Defendant BOP's media disclosure policy and on-line inmate locator service obviate any privacy interest that inmates may have in their names, register numbers, and location. *Response* [#55] at 19; *see also* 28 C.F.R. § 540.65(b); *BOP, Inmate Locator*, http://www.bop.gov/iloc2/LocateInmate.jsp. However, Plaintiff fails to recognize the distinction between the public's interest in an inmate's general location in one of the federal government's prisons and that inmate's specific housing unit location within a single prison. The media disclosure policy and inmate locator service serve the public interest of ensuring that inmates are housed in prisons with proper security levels as well as allowing members of the public to communicate with federal prison inmates if they so choose. The public will not gain any additional significant understanding of the operations or activities of the government from the knowledge of day-to-day movements or housing unit status of ADX inmates. *See Trentadue*, 501 F.3d at 1235-36. Accordingly, I conclude that the public interest in this information fails to outweigh the privacy expectations of ADX inmates. *Id.* Therefore, Defendant BOP's redaction of inmate names, register numbers, housing statuses, and medical information meets the requirements of Exemption 7(C).

### d.    ADX Shakedown Log

Defendant BOP redacted information from a Shakedown Log showing the times and locations of area searches conducted by ADX staff.[10] *Defendants' Motion* [#53] at 16.

---

[10] While Defendant BOP also initially withheld information documenting the types and final disposition of contraband confiscated by ADX staff, BOP voluntarily released this

Defendant BOP withheld this information pursuant to Exemptions "high" 2, 7(C), and 7(F), claiming that disclosure of the dates and times of specific area searches would allow inmates to conceal contraband by predicting the timing of future searches. *Id.* Plaintiff argues that the shakedown schedule is not an internal BOP personnel rule or practice, and that Defendant BOP cannot prove that disclosure of the information would risk circumvention of any rule or statute. *Response* [#55] at 20.

Guidelines for maintaining prison security qualify as "predominantly internal" records. *Miller*, 1989 WL 10598, at *1-2. Here, the dates and times of specific area searches included on the ADX Shakedown Log reflect core ADX security issues. As such, the Court concludes that the redacted information is predominantly internal for the purposes of falling within the protection of Exemption "high" 2. The Shakedown Log is also a personnel practice, as it documents specific staff duties conducted at specific times. *See Audubon Soc'y*, 104 F.3d at 1204 (strictly requiring withheld information to comprise an internal personnel rule or personnel practice). Furthermore, I credit Defendant BOP's contention that disclosure of the remaining redacted material pertaining to the ADX shakedown schedule could significantly risk circumvention of agency regulations or statutes by allowing inmates to predict the locations and times of future shakedowns, thereby avoiding contraband detection. *See Crooker*, 670 F.2d at 1073-74 (holding that agencies may withhold information pursuant to Exemption 2, the public disclosure of which "would risk circumvention of agency regulations"). As a result, I conclude that Defendant BOP properly applied Exemption "high" 2 to redact specific times and locations of area shakedowns.

---

information to Plaintiff after reprocessing the Shakedown Log. *Supplemental Affidavit* [#71-2] at 10.

Defendant BOP also cites Exemptions 7(C) and 7(F) for redaction of personal identification information from the Shakedown Log.  These exemptions protect personal privacy and personal safety, respectively, in the context of law enforcement records.  It is beyond dispute that Defendant BOP compiles the Shakedown Log for law enforcement purposes, because the log establishes a record of BOP's efforts to prevent ADX inmates from possessing contraband. *See Trentadue*, 501 F.3d at 1235 (requiring document withheld pursuant to Exemption 7 to have been compiled for law enforcement purpose).  Furthermore, because the redacted information includes information identifying inmates and ADX staff involved in shakedowns, it clearly meets the requirements of Exemptions 7(C) and 7(F).  *See Reporters Comm.*, 489 U.S. at 780 (categorically approving redaction of third party identities pursuant to Exemption 7(C), especially where those parties are the subject of law enforcement records); *Antonelli v. BOP*, No. 07-2016 (CKK), 2009 WL 1593701, at *2-3 (D.D.C. June 9, 2009) (unpublished decision) (protecting the identities of federal inmates from disclosure to third parties pursuant to Exemption 7(F)).  Further, while the public may hold some interest in the names of ADX inmates from whom contraband is confiscated, the Court finds that such interest is outweighed in this case by concerns for privacy and personal safety.  *See Trentadue*, 501 F.3d at 1236.  Therefore, I conclude that remaining redactions reflected in the Shakedown Log are also protected by Exemptions 7(C) and 7(F).

### 4.    Conclusion

The Court has carefully reviewed each of Defendant BOP's redactions at issue in Claim VII and finds that the redacted materials qualify for the FOIA exemptions as asserted by Defendant BOP.  Therefore, I find that there is no genuine issue as to any material fact

46

that these records were properly withheld.  Accordingly, I **RECOMMEND** that Defendants'

Motion be **GRANTED** as to Claim VII.

### G.    Claim VIII

#### 1.    Adequacy of the Search

Pursuant to Claim VIII, Plaintiff seeks copies of all documents related to three

specific administrative grievances pursued by him.  *Defendants' Motion* [#53] at 19.  As a

preliminary matter, I note that Plaintiff does not challenge the adequacy of Defendant

BOP's records search.  Nevertheless, I briefly consider whether Defendants conducted an

adequate search.  In its *Vaughn* index, Defendant BOP asserts that all records related to

administrative grievances are kept in folders labeled with an assigned number.  *Hill*

*Declaration* [#53-2] at 2.  BOP staff familiar with the administrative remedy process and the

records maintained by Defendant BOP searched for and located the folders containing all

materials related to the three specific administrative grievances identified by Plaintiff.  *Id.*

The folders contained a total of 155 pages of responsive materials.  *Id.* at 2.  These

undisputed facts indicate that Defendant BOP conducted its search in a manner reasonably

calculated to uncover all relevant documents.  *Weisberg*, 745 F.2d at 1485.

#### 2.    Attorney Work-Product Redactions

Plaintiff's reformulated Claim VIII challenges only two redacted statements contained

in letters written by a BOP attorney to the ADX Warden.  *Status Report* [#64] at 2.

Defendant BOP withheld the statements pursuant to Exemption 5, which protects privileged

information that is also the product of a government agency.  *Stewart*, 554 F.3d at 1239.

Defendant BOP asserts that the statements in question contained information developed

by a BOP attorney in anticipation of litigation.   *Defendants' Motion* [#53] at 19.  Examining the documents themselves, it is apparent that the statements contain the opinion of the BOP attorney regarding application of the law to the specific facts of Plaintiff's administrative grievances.  I conclude that the redacted information constitutes attorney work product created in anticipation of litigation.  I also find that the information was prepared on behalf of Defendant BOP, a government agency.  *See Stewart*, 554 F.3d at 1239.  As such, Defendant BOP properly redacted the statements pursuant to Exemption 5.  Therefore, I find that there is no genuine issue as to any material fact that these records were properly withheld.   Accordingly, I **RECOMMEND** that Defendants' Motion be **GRANTED** with respect to Claim VIII.

### H.      Privacy Act Requests

In addition to his FOIA requests, Plaintiff advances Claims I, III, IV, VII and VIII pursuant to the PA, 5 U.S.C. § 552a.  *Response* [#55] at 21.  Defendant BOP contends that the relevant records were derived from records systems which are exempt from the disclosure provision of the PA pursuant to 28 C.F.R. § 16.97.  *Reply* [#56] at 10.  Plaintiff counters that Defendant BOP failed to demonstrate that the disputed records derive from an exempted system.  *Response* [#55] at 21-22.  Plaintiff also asserts that Defendant BOP failed to establish that the specific records requested by Plaintiff are subject to exemption pursuant to 5 U.S.C. § 552a(j)-(k).  *Id.*

The parties agree that Claim I is moot because Plaintiff received all requested documents.  *Status Report* [#64] at 1.  Claim III addresses files located in Defendant BOP's PDS, which contains inmate psychological records.  These files derive from the Inmate

Physical and Mental Health Record System, which is a system exempt from disclosure pursuant to 28 C.F.R. § 16.97(a)(6). Claim IV addresses records involving Plaintiff's mail correspondence. Defendant BOP maintains such records in its Inmate Central Records System, which is exempt from disclosure pursuant to 28 C.F.R. § 16.97(a)(4). *See* 67 Fed. Reg. 31371-01 (May 9, 2002). Claim VII addresses records related to Plaintiff's tort claims against the BOP pursuant to the FTCA. Such records are derived from the Federal Tort Claims Act Record System, which is exempt from disclosure pursuant to 28 C.F.R. § 16.97(a)(8). Finally, Claim VIII relates to records involving Plaintiff's administrative grievances. Defendant BOP maintains these records in the Administrative Remedy Record System, which is exempt from disclosure pursuant to 28 C.F.R. § 16.97(a)(3).

As noted, all responsive records requested by Plaintiff pursuant to the PA fall within a system which is exempt from disclosure. Furthermore, because all of these records were generated during Plaintiff's incarceration in federal prison, they are subject to exemption pursuant to 5 U.S.C. § 552a(j)(2), which allows agencies to exempt "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision." Therefore, I find that there is no genuine issue as to any material fact that these records were properly withheld. Accordingly, I **RECOMMEND** that Defendants' Motion for Summary Judgment be **GRANTED** with respect to Claims III, IV, VII, and VIII pursuant to the PA.

### I.    Litigation Costs and Fees

Given that Defendants voluntarily produced several records requested by Plaintiff after commencement of litigation, Plaintiff requests litigation costs and attorneys' fees

pursuant to 5 U.S.C. § 552(a)(4)(E).  *See Amended Complaint* [#4] at 8; *Status Report* [#64] at 1-3.[11]  As a preliminary matter, nonattorney *pro se* litigants are not entitled to receive an award of attorneys' fees pursuant to FOIA.  *Kay v. Ehrler*, 499 U.S. 432, 435 (1991); *see also Burka v. U.S. Dep't of Health & Human Servs.*, 559 F.2d 1182 (D.C. Cir. 1288) (approving awarding of costs but not attorneys' fees to *pro se* FOIA litigant). However, courts can award litigation costs to *pro se* complainants who substantially prevail against the government in litigated FOIA claims.  *See Carter v. VA*, 780 F.2d 1479, 1481-82 (9th Cir. 1986); *Clarkson v. IRS*, 678 F.2d 1368, 1371 (11th Cir. 1983).   A plaintiff substantially prevails by, among other things, "obtain[ing] relief through either a judicial order, or . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).   Courts generally consider four factors when deciding if a specific plaintiff merits an award of costs:  "1) the public benefit derived from the case; 2) the commercial benefit to the plaintiff; 3) the nature of the plaintiff's interest in the records; and 4) whether the government has a reasonable basis for withholding the requested information."  *Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995) (citation omitted); *see also Detroit Free Press, Inc. v. DOJ*, 73 F.3d 93, 98 (6th Cir. 1996).

In this case, Defendant BOP's voluntary disclosures do not provide any significant public benefit.[12]  The voluntarily disclosed records pertain primarily to disciplinary actions

---

[11] Although this request for relief should have been made by motion, D.C. Colo. L. Civ. R. 7.1(C), I briefly consider it.

[12] Pursuant to Claim I, Defendant BOP voluntarily released information related to Incident Report No. 1231308 and the ensuing disciplinary hearings.  *Defendants' Motion* [#53] at 1-2; *Reply* [#56] at 1.  Pursuant to Claim VII, Defendant BOP voluntarily released information contained in Plaintiff's FTCA database files describing the types of contraband confiscated by

or grievances related to Plaintiff and his detention in federal prison.[13]  *See Defendants'*

*Motion* [#53] at 1, 6, 10.  While Plaintiff does not expressly state his personal interest in

these materials, the nature of his FOIA requests suggests that Plaintiff is largely interested

in disputing the outcomes of his personal criminal prosecutions and tort claims.

Furthermore, I find that Defendant BOP did not initially withhold the records in bad faith.

Rather, Defendant BOP initially withheld the information out of an abundance of caution for

the personal safety or privacy of third parties.  *See Defendants' Motion* [#53] at 1-3;

*Supplemental Affidavit* [#71-2] at 10.  On balance, I find that the voluntary disclosure

received from Defendant was insubstantial and Plaintiff is not entitled to recover any

litigation costs.  *See* 5 U.S.C. § 552(a)(4)(E)(ii)(II); *Maydak v. DOJ*, 579 F. Supp. 2d 105,

108-09 (D.D.C. 2008) (denying FOIA litigation costs to federal inmate because he was the

sole beneficiary of voluntarily released records, the public held little if any interest in the

documents, and the BOP did not exhibit bad faith by initially withholding them).  In addition,

denial without prejudice of Defendants' Motion with respect to the adequacy of the search

pursuant to Claim II does not constitute any relief to Plaintiff or make him a prevailing party.

*See also Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 195 (D.C. Cir.

2007) (denying prevailing party status to plaintiff even where court agreed that agency

failed to conduct an adequate search but did not order agency to turn over responsive

---

ADX staff during shakedowns. *Supplemental Affidavit* [#71-2] at 10.  Finally, pursuant to Claim VIII, Defendant BOP voluntarily released records pertaining to Plaintiff's administrative grievances after BOP determined that the initial release to Plaintiff accidentally contained several fully redacted (i.e., blank) pages.  *Reply* [#56] at 10; *Status Report* [#64] at 2-3.

[13] The Court notes that, while information regarding the types of contraband confiscated by ADX staff during shakedowns does not pertain directly to Plaintiff, this information was only identified as potentially responsive pursuant to a search for files related to Plaintiff's FTCA claims.

documents).  Accordingly, I **RECOMMEND** that Plaintiff's request for litigation costs and fees be **DENIED**.

## IV.  Conclusion

As set forth above, the Court **RECOMMENDS** that Defendants' Motion [#53] be **GRANTED in part** as to the withholding of the six-page ADX staff roster pursuant to Claim II.  The Court further **RECOMMENDS** that Defendants' Motion be **DENIED in part without prejudice** as to the adequacy of Defendant BOP's records search pursuant to Claim II. The Court further **RECOMMENDS** that Defendants' Motion be **GRANTED** as to Claims I, III, IV, V, VI, VII and VIII.  The Court further **RECOMMENDS** that the parties bear their own costs.  Finally, in the event that the District Court accepts the above Recommendation and denies Defendants' Motion without prejudice with respect to the adequacy of Defendant BOP's records search pursuant to Claim II, the Court further **RECOMMENDS** that the dispositive motions deadline be extended to **thirty (30) days** after the District Court's ruling.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review

by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

     Dated:  August 14, 2009

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix
