IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02303-REB-KLM

MARK JORDAN,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, and
FEDERAL BUREAU OF PRISONS,

      Defendant.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L.  MIX**

      This matter is before the Court on **Plaintiff's Motion for Judgment as a Matter of Law** [Docket No. 81; Filed October 1, 2009] ("Plaintiff's Motion").  Defendants responded [Docket No. 87; Filed November 5, 2009], Plaintiff replied [Docket No. 91; Filed November 30, 2009], and Plaintiff's Motion is  ripe for resolution.  Also before the Court is **Defendants' Supplemental Motion for Summary Judgment** [Docket No. 88; Filed November 6, 2009] ("Defendants' Motion").  Plaintiff responded [Docket No. 92; Filed November 30, 2009], Defendants replied [Docket No. 94; Filed December 16, 2009], and Defendants' Motion is also ripe for resolution.

      At issue in these Motions are Claims II and V of Plaintiff's Amended Complaint.  *See* Amended Complaint, Docket No. 26 ("Complaint").  For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Motion be **DENIED in part and GRANTED in part** as to Claim II and **DENIED as moot** as to Claim V, and that Defendants' Motion be **GRANTED in part and DENIED in part** as to Claim II and

**DENIED as moot** as to Claim V.

## I.    Factual and Procedural Background

Before the Court is what remains of Plaintiff's lawsuit to obtain certain records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a. Plaintiff is a federal inmate at the Administrative Maximum Penitentiary in Florence, Colorado ("ADX"). Between October 2005 and July 2007, Plaintiff submitted a series of eight records requests to Defendants, the Federal Bureau of Prisons ("BOP") and the United States Department of Justice ("DOJ"). Defendants denied the requests, and Plaintiff filed this action appealing Defendants' disposition of his records requests. *See Complaint* [#26]. In his Complaint, Plaintiff seeks an injunction to prevent Defendants from withholding the requested records as well as attorneys' fees and costs associated with this civil action. *Id.* at 8. Plaintiff brought a separate claim for each of his denied records requests (Claims I - VIII). *Id.*

All but two of these claims have been dismissed as a result of the Court's Order [Docket No. 79] on Defendants' previously filed Motion for Summary Judgment [Docket No. 53]. The Court granted Defendant summary judgment as to Claims I, III, IV, VI, VII, and VIII, leaving pending for further review Claim II, including both the adequacy of Defendants' search and the validity of the claimed exemption, and Claim V. *See Order* [#79].[1] The Court gave the parties leave to file additional motions for summary judgment as to these remaining Claims [Docket No. 80]. Before the Court are the

---

[1]The District Court originally issued an Order [Docket No. 75] adopting the magistrate judge's recommendation [Docket No. 74] that all claims be dismissed except Claim II, on which the undersigned recommended additional briefing regarding the adequacy of Defendants' search. Upon receipt of Plaintiff's Objections [Docket No. 78], the District Court vacated its previous Order and dismissed all claims but Claims II and V, as described above. *See* Docket No. 79.

parties' cross-motions for summary judgment as to the remaining two Claims.

## II.    Standard of Review

## A.    Summary Judgment

"FOIA claims are typically resolved on summary judgment . . . ." *Pub. Employees for Envtl. Responsibility, Rocky Mountain Chapter v. EPA*, 978 F. Supp. 955, 959 (D. Colo. 1997).  The purpose of a summary judgment motion is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the opposing party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the suit pursuant to the governing substantive law.  *Id.*

The movant must show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  After the movant has met its initial burden, the burden shifts to the opposing party to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in his favor.  *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental*

*Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The opposing party must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

**B.    FOIA**

The Court has jurisdiction to review the FOIA and PA challenges raised in Plaintiff's Complaint pursuant to 28 U.S.C. § 1331. To promote transparency in government, Congress passed FOIA in 1966 to provide a public right of access to

4

agency records. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225 (10th Cir. 2007).

Parties seeking to enforce their right to access records may do so through the federal

courts. *Id.* FOIA helps "to ensure an informed citizenry, vital to the functioning

democratic society, needed to check against corruption and to hold the governors

accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242

(1978). However, rather than requiring disclosure of all government records, FOIA

"permits access 'only to information that sheds light upon the government's

performance of its duties.'" *Audubon Soc'y v. U.S. Forest Serv.*, 104 F.3d 1201, 1203

(10th Cir. 1997) (quoting *Sheet Metal Workers Local No. 9 v. U.S. Air Force*, 63 F.3d

994, 997 (10th Cir. 1995)). Thus, despite the strong policy favoring transparency,

Congress created nine FOIA exemptions that allow agencies to withhold specific

materials to avoid harming legitimate government interests. 5 U.S.C. § 552(b);

*Trentadue*, 501 F.3d at 1225-26 (citing *Casad v. U.S. Dep't of Health & Human Servs.*,

301 F.3d 1247, 1250-51 (10th Cir. 2002)). Of the nine exemptions, only one remains

relevant to the case at bar. Specifically, FOIA

> does not apply to matters that are --
> . . .
> (7) records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement records or
> information . . .(F) could reasonably be expected to endanger the life or
> physical safety of any individual . . . .

5 U.S.C. § 552(b).

When determining whether an exemption applies to a specific agency record,

courts interpret the act broadly in favor of disclosure while narrowly construing its

exemptions. *Info. Network for Responsible Mining v. BLM*, 611 F. Supp. 2d 1178, 1183-

84 (D. Colo. 2009) ("*INFORM*") (citing *Trentadue*, 501 F.3d at 1226). Finally, because the Court is addressing a motion for summary judgment, the Court notes that the agency asserting a FOIA exemption bears, at the outset, the burden of justifying nondisclosure. *Trentadue*, 501 F.3d at 1226 (citing *Alirez v. NLRB*, 676 F.2d 423, 425 (10th Cir. 1982)).

III. **Claim II**

The following facts are undisputed. In Claim II of his Complaint, Plaintiff seeks disclosure of a complete list of names and titles of all ADX staff. *Defendants' Motion* [#88], Undisputed Facts ("UF") ¶ 1. Plaintiff originally sent this request to Defendant BOP on May 15, 2006. *Id.* Defendant BOP identified a six-page ADX staff roster as the only responsive document, then denied Plaintiff's request on July 14, 2006. *Id.* ¶ 2. Defendant BOP withheld the document, asserting that it is protected from disclosure by 5 U.S.C. § 552(b)(7)(F) ("Exemption 7(F)"). *Id.* ¶ 3. Exemption 7(F) allows an agency to withhold information "compiled for law enforcement purposes" that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Defendant DOJ affirmed BOP's non-disclosure pursuant to Exemption 7(F). *Plaintiff's Motion* [#81], UF ¶ 3.

At issue in the instant Motion is whether the ADX staff roster is properly withheld pursuant to Exemption 7(F) and whether Defendants' search for a document responsive to Plaintiff's request was adequate.

A. **Exemption 7(F)**

The parties dispute the applicability of Exemption 7(F) to the staff roster. Defendants have the burden of justifying that Exemption 7(F) supports their refusal to

disclose the staff roster. *Alyeska Pipeline Serv. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988).

The Court first evaluates whether the Defendants have made the required threshold showing that the roster at issue was "compiled for law enforcement purposes." *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989) (noting that "[b]efore [defendants] may invoke [exemptions under 5 U.S.C. 552(b)(7)], [they] [have] the burden of proving the existence of such a compilation for such a purpose"); *see also Trentadue*, 501 F.3d at 1235 (describing determination of whether records at issue were compiled for law enforcement purposes as a "threshold determination"). Defendants argue that the staff roster was "compiled for law enforcement purposes" "because BOP is a law enforcement agency and its employees are law enforcement officers." *Defendants' Motion* [#88] at 3. In their Reply, Defendants further explain that "there is a rational nexus between the staff roster, which identifies the employees at ADX, and the duties of these very employees to protect inmates, staff and the community." *Defendants' Reply* [#94] at 5. Plaintiff maintains that Defendants fail to establish that Defendant BOP is a law enforcement agency, arguing that Defendant BOP has no law enforcement authority.

Courts evaluating whether documents meet the requirement of being "compiled for law enforcement purposes" under Section 552(b)(7) of FOIA have used two different methods of making this determination: the "*per se* rule" and the "rational nexus test." *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 185 (3d Cir. 2007) (discussing difference between *per se* rule and rational nexus test); *Jones v. F.B.I.*, 41 F.3d 238, 245 (6th Cir. 1994) (noting that as of 1994, three Circuits had adopted *per se*

rule while D.C. Circuit and Ninth Circuit had adopted the "rational nexus" rule). Under the *per se* rule, *any* document compiled by a law enforcement agency falls within the definition of "records or information compiled for law enforcement purposes." *See Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001). Under the rational nexus test, on the other hand, an agency seeking to withhold documents under one of the Section 552(b)(7) exemptions must show a "rational nexus" between the agency's "law enforcement authority and the information contained in the withheld material." *Abdelfattah*, 488 F.3d at 186; *see also Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995) (holding that the government must demonstrate a plausible law enforcement purpose and a rational nexus between that purpose and the documents for which the exemption is claimed).[2]

The Tenth Circuit has not adopted either rule. *See Trentadue*, 501 F.3d at 1235. In *Trentadue*, the court declined to adopt the *per se* rule under the facts presented because it "harbor[ed] significant doubts as to whether [the Integrity Committee of the President's Council on Integrity and Efficiency] [was] a law enforcement agency." *Id.* In cases where the law enforcement nature of the defendant government agency is in question, lower courts in this Circuit have applied the rational nexus test without comment. *See Living Rivers v. U.S. Bureau of Reclamation*, 272 F.Supp.2d 1313 (D. Utah 2003) (quoting 43 U.S.C. § 373b(a)) (finding that Defendant Bureau of Reclamation had both administrative and law enforcement functions and holding that

---

[2]At least one court has formulated the inquiry more narrowly as being whether the document "relate[s] to anything that can be fairly characterized as an enforcement proceeding." *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002).

inundation maps of areas surrounding dams properly withheld under Exemption 7(E) where used to inform plan "to protect and alert potentially threatened people in the vicinity of the dams," which fell within the Bureau's express law enforcement statutory mandate to "maintain law and order and protect persons and property within Reclamation projects and on Reclamation lands"); *Fine v. U.S. Dep't of Energy, Office of Inspector Gen.*, 823 F.Supp. 888, 907 (D. N.M. 1993) (citations omitted) (observing that "[a]n agency with both administrative and law enforcement functions must demonstrate that its purpose in compiling the particular document fell within its sphere of enforcement authority" and finding that records of names and identifying information of individuals cooperating in investigation were related to agency's law enforcement function).

BOP is a law enforcement agency.  *See Ruston v. U.S. Dep't of Justice*, No. 06-0224 (RMU), 2007 WL 809698 (D.D.C. March 15, 2007) (citing *Duffin v. Carlson*, 636 F.2d 709, 713 (D.C. Cir. 1980)); *Swope v. U.S. Dep't of Justice*, 439 F.Supp. 2d 1, 6 (D.D.C. 2006).  Specifically, "BOP serves a law enforcement function by protecting inmates, staff and the community."  *Romero-Cicle v. U.S. Dep't of Justice*, No. CIV A 05-2303, 2006 WL 3361747, at *5 (D. D.C. Nov. 20, 2006); *Butler v. BOP*, No. Civ.A. 05-643-JDB, 2005 WL 3274573, at *3 (D.D.C. Sept. 27, 2005); *see* 18 U.S.C. § 4042 (setting forth duties of BOP).  Plaintiff maintains that BOP is not a law enforcement agency, arguing that 18 U.S.C § 4042 "merely grants the BOP primary administrative authority over the federal prison system and establishes the minimal duty of care owed to prisoners."  *Plaintiff's Response* [#92] at 4.  However, Plaintiff points to no case law supporting the proposition that BOP is not a law enforcement agency, and the Court has

found none. Indeed, classification of BOP as a law enforcement agency is entirely logical. BOP has complete responsibility for supervising inmates who are serving prison sentences for violating federal (and sometimes state) laws. This function is but one point on the law enforcement continuum, which runs from protection of the public and apprehension of wrongdoers to rehabilitation and/or reintegration of them into society. Prisons exist for law enforcement purposes, and BOP runs the federal prisons in this country. BOP's internal organizational documents (such as the roster at issue here) inherently serve a law enforcement purpose, as such is BOP's overarching purpose.

Because of the general law enforcement purpose of BOP and nature of the record here at issue, the Court concludes that under either the *per se* rule or the rational nexus test, the ADX staff roster qualifies as a document "compiled for law enforcement purposes." Under the *per se* rule, the repeated holding that BOP is a law enforcement agency alone is a sufficient basis for the roster to be a record "compiled for law enforcement purposes." Application of the rational nexus test requires further analysis.

The Declaration of Richard Winter, attached to Defendants' Motion, provides the necessary showing of the relationship between the ADX staff roster and Defendant BOP's law enforcement authority. Mr. Winter asserts that the staffing roster at issue was "compiled to aid the agency in fulfillment of its law enforcement mission." *See* Declaration of Richard Winter, Exhibit A, Docket No. 88, ¶ 30 ("Declaration of R. Winter"). While this statement is not specific, the Court accepts as undisputed the fact that the ADX roster was created to assist BOP in carrying out its mission. The roster is a listing of all ADX employees, accompanied by their job titles. These employees, by virtue of their employment at ADX, are actively engaged in furthering ADX's purpose of

protecting inmates, staff, and the community; each employee's job title clarifies his or her specific role in accomplishing that overall mission. The roster clearly was created for the purpose of organizing BOP's human resources and thus furthering BOP's mission. *See, e.g.*, *Moore v. United States*, 602 F.Supp. 2d 189, 192 (D.D.C. 2009) (where disclosure of BOP's telephone activity records at issue, finding without further comment that "it is beyond serious debate that the records at issue are compiled, in part, for law enforcement purposes"); *Robinson v. Attorney General of U.S.*, 534 F.Supp. 2d 72, 80-81 (D.D.C. 2008) (finding lack of information in defendant's affidavit "not fatal" to threshold showing that documents compiled for law enforcement purposes where records sought "pertained to alleged confidential informants and information they provided during the course of a criminal investigation involving plaintiff"); *Ruston*, 2007 WL 809698, at *4 (noting simply that BOP "used [the] records in carrying out the agency's law enforcement mission" and finding BOP records met Exemption 7 threshold because part of BOP's law enforcement mission was the "management and regulation of federal correctional facilities" and document at issue was created by BOP employee conducting psychological evaluation of plaintiff); *Romero-Cicle*, 2006 WL 3361747, at *4-5 (where the records were located in "BOP's Inmate Central Records System, the repository for all records pertaining to each inmate," finding that records compiled for law enforcement purposes without further analysis)*. Cf. Antonelli v. U.S. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 04-1180, 2005 WL 3276222, at *7 (D.D.C. Aug. 16, 2005) (finding BOP had not made necessary showing that document "compiled for law enforcement purposes" where only explanation of its relation to law enforcement made in briefing, no evidence in accompanying agency declaration or

affidavit, and document not obviously related to law enforcement simply because it "was written by staff detailing conversation with another staff member"). Accordingly, applying the rational nexus test, the Court concludes that the ADX staff roster is rationally related to the furtherance of Defendant BOP's general law enforcement mission of protecting inmates, staff, and the public.

Next, the Court must consider whether Defendants have established that disclosure of the staff roster "could be reasonably expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Defendants must show "some nexus between disclosure and possible harm." *Linn v. U.S. Dep't of Justice*, Civ. A. No. 92-1406, 1995 WL 631847, at *8 (D.D.C. Aug. 22, 1995). The term "any individual" encompasses the staff as well as their family and friends and is not limited to "known, named individuals only." *Living Rivers*, 272 F.Supp. 2d at 1321 (citing *Garcia v. U.S. Dep't of Justice*, 181 F.Supp. 2d 356, 378 (S.D.N.Y. 2002)). "[I]n evaluating the validity of an agency's invocation of Exemption 7(F), the court should 'within limits, defer to the agency's assessment of danger.'" *Id.* (quoting *Garcia*, 181 F.Supp. 2d at 378). "The test is not whether the court personally agrees in full with the [agency's] evaluation of the danger – rather, the issue is whether on the whole record the [a]gency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in [the field] in which the [a]gency is an expert and given by Congress a special role." *L.A. Times Commc'ns, LLC v. U.S. Dep't of the Army*, 442 F. Supp. 2d 880, 898, 900 (C.D. Cal. 2006) (quoting *Gardels v. C.I.A.*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)) (deferring

to Army Colonel's judgment as to danger in disclosure of names of certain companies).[3]

Here, Defendants maintain that disclosure of the ADX staff roster will endanger ADX employees as well as their families by "providing the information which would allow anyone to threaten, manipulate, or harm [ADX staff]." *Declaration of R. Winter* [#88] ¶ 30. Through the Declaration of Mr. Winter, Defendants also provide evidence that ADX is the "single most secure prison in the federal system" and was "designed to house inmates who require an uncommon level of security." *Declaration of R. Winter* [#88] ¶ 31.[4] Mr. Winter further states that "[u]nique security and control procedures have been implemented at ADX Florence to enhance the safety of staff, inmates, and visitors." *Id.* As noted above, BOP was given the role of managing federal prisoners by Congress. *See* 18 U.S.C. § 4402. Because ADX is the most secure federal prison in the country, housing those federal prisoners deemed to require the highest possible security measures, the Court finds reasonable and plausible BOP's assessment that disclosure of ADX staff names could endanger them. The Court therefore defers to the Defendant BOP's judgment that disclosure of the staff roster would endanger the physical safety of individuals, especially given the context of the unique security concerns of ADX. Furthermore, because the physical safety of any individual generally outweighs any

---

[3]Plaintiff cites *Hall v. U.S. Dep't of Justice*, 552 F.Supp.2d 23, 30 (D.D.C. 2008) for the proposition that courts have interpreted (b)(7)'s language to mean that "the agency must demonstrate the threat 'is real.'" *Plaintiff's Response* [#92] at 7-8. The portion of the case cited by Plaintiff addresses FOIA Exemption 6 and notes that in the context of establishing proper Exemption 6 withholding, the agency must demonstrate that "*the threat to employees' privacy* is real." *Hall*, 552 F.Supp.2d at 30 (quoting *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F.Supp.2d 100, 116 (D.D.C. 2005)) (emphasis added). The language relied upon by Plaintiff does not pertain to Exemption 7, and Plaintiff's argument is therefore unpersuasive.

[4]Plaintiff disputes that ADX is the most secure federal prison, but he offers no evidence to the contrary. *See Plaintiff's Reply* [#91] at 1.

public interest in disclosure of a document, a court addressing Exemption 7(F) need not engage in any balancing of interests. *See Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002). The Court concludes that Defendants have made the necessary showing that disclosure of the roster "could reasonably be expected to endanger the life or physical safety of any individual." *See Amer. Civil Liberties Union v. U.S. Dep't of Defense*, 543 F.3d 59, 78 (2d Cir. 2008) (noting that "most courts that have upheld government's reliance on exemption 7(F) have done so where the challenged nondisclosure sought to protect government agents, witnesses, informants, and others who have participated in law enforcement investigations or proceedings"), *vacated and remanded on other grounds*, 130 S.Ct. 777 (Mem.) (2009); *Badalamenti v. U.S. Dep't of State*, 899 F.Supp. 542, 550 (D. Kan. 1995) (upholding withholding by Drug Enforcement Administration names of law enforcement personnel pursuant to Exemption 7(F)).

The Court is not persuaded otherwise by Plaintiff's argument that the withholding is unlawful pursuant to *Maydak v. U.S. Dep't of Justice*, 362 F.Supp. 2d 316 (D.D.C. 2005), in conjunction with BOP Program Statement 1351.05. In *Maydak*, the court ordered release of a staff roster of the Federal Correctional Institute in Ray Brook, New York. Defendant had withheld the names on the staff roster, relying on Exemption 2 and Exemption 7(F).[5] The only argument or justification given by defendant for withholding the names under these exemptions was that according to "BOP policy," names and titles of staff of Medium, Maximum and Administrative Facilities were not to

---

[5]Exemption 2 allows for the non-disclosure of information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. 552(b)(2).

be disclosed to inmates housed at those facilities. *Maydak*, 363 F.Supp. 2d at 322-23. The *Maydak* court denied defendant's motion for summary judgment and ordered disclosure of the staff roster in its entirety, including staff names. *Id.* at 323. Without discussing defendant's arguments or evidence, the court noted that defendant had not made the necessary threshold showing that the document was "compiled for law enforcement purposes." *Id.* at 322-23. Furthermore, and most importantly, the court's holding is based upon its finding that the cited BOP policy was unlawful: "The BOP's motion for summary judgment [as to the withholding of the staff names] is denied. In light of the BOP's admission that but for [the identity of] the requester the names would be subject to disclosure . . . the Court finds that no genuine issue of material fact is presented with respect to this disclosure requirement and, therefore, will grant summary judgment to plaintiff on this count." *Id.* at 323. As the court had previously noted, "[a]n agency's duty to release information is not predicated on the identity of the requester or the purpose of the request." *Id.* at 321 (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771-72 (1989)). In sum, the *Maydak* opinion offers no analysis of the requirements for a threshold showing that a document was compiled for law enforcement purposes; nor is the *Maydak* court's rationale for ordering release of staff names present here. Defendants here have made clear that they consider release of the ADX staff roster dangerous as a general matter. The Court therefore finds *Maydak* unpersuasive.

Plaintiff further contends that the roster must be released because BOP policy as stated in the BOP Program Statement 1351.05 ("Program Statement") is evidence that release of the roster is not reasonably expected to endanger any individual. He argues

that the roster should be released because according to the Program Statement, "a list of Bureau employees may be generally releasable." *See* Program Statement 1351.03 § 9(c), Exhibit 2, Docket No. 55, available at http://www.bop.gov/policy/ progstat/1351_005.pdf (Sept. 19, 2002). He also points to the fact that the Program Statement defines as "public information" staff rosters including staff name, position title, grade, salary, duty station, and duty station address. *See* Program Statement, attachment B at 1.

The Court rejects Plaintiff's argument that because of the language of the Program Statement, staff names are not properly withheld pursuant to Exemption 7(F). First of all, the Court is not persuaded that the Program Statement communicates a BOP policy that disclosure of the ADX staff roster would not endanger staff. The Program Statement begins by stating, in its preliminary and overarching "Guidelines for Disclosure" section, that "Bureau staff may assert any applicable exemption to disclosure which is provided under the FOIA in 5 U.S.C. § 552(b)." Program Statement §1(7)(c). The Program Statement goes on to describe examples of documents or information "which ordinarily may be withheld" – including an example of information deemed to be "public information" that may nevertheless be withheld. *See id.* §1(7)(d)(1) (noting that request by inmate for "public information" about another inmate requires further review, as "[a] high risk of gang-related prison violence is an example of a prison security concern which might justify the withholding of public information about one inmate to another inmate while in custody."). The list of examples in which this example is included is not exhaustive, and the inclusion of an example of proper withholding of "public information" demonstrates an acknowledgment of the possibility

16

that "public information" may nevertheless be withheld pursuant to a FOIA exemption. *See id.* §1(7)(d) ("These examples are not intended to represent an all-inclusive list of every situation when FOIA exemptions may apply, nor are the FOIA exemptions cited for each example the only ones which may apply to the examples provided.").

Furthermore, the statement cited by Plaintiff is found under section 9 of the Program Statement, which is entitled "Protection of individual privacy – disclosures of records to third parties" and elaborates on 28 C.F.R. § 513.34, a BOP regulation of the same name regarding release of information under FOIA. Exemptions 6 and 7(C) allow the withholding of information the release of which might constitute an "unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6), (7)(C). Taking the cited statement in its original context, the Court understands it to mean that, unlike lists of staff that include their social security numbers, birth dates, or other personal information, release of staff rosters with only more basic information, such as their names, titles, and pay grades, would not violate staff members' personal privacy and are not properly withheld pursuant to either Exemption 6 or Exemption 7(C). *See, e.g.*, *Romero-Cicle*, 2006 WL 3361747, at *5 (finding documents containing birth dates, addresses, and social security numbers of prison visitors properly withheld by BOP pursuant to Exemption 7(C)); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1124-26 (D.C. Cir. 2004) (finding pardon applications containing personal information such as social security numbers and birth dates properly withheld by DOJ pursuant to Exemption 6). The Program Statement's guidance that a roster without personal identifying information is not properly withheld on personal privacy grounds does not mean that BOP cannot withhold such a roster under another exemption, given

17

the Statement's general guidance that any proper exemption may be claimed. Thus, BOP's current position, that release of the staff roster would endanger the lives and physical safety of staff and is therefore properly withheld under Exemption 7(F), is consistent with the Program Statement.[6]

## B.    Segregable Information

Pursuant to 5 U.S.C. § 552(b), "even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined from exempt portions." *Johnson v. Executive Office for U.S. Attorney*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552(b))(citations omitted).   Plaintiff argues that if the Court rules that the ADX staff roster is properly withheld pursuant to Exemption 7(F), only the names of the staff members fall under Exemption 7(F) and therefore the roster must be redacted

---

[6]Even assuming, *arguendo*, that the provision in the Program Statement relied upon by Plaintiff is an unequivocal statement of BOP policy that a staff roster consisting of employee names and job titles is always releasable, the Court remains unconvinced that a different result should be reached in this case. A Program Statement, such as the one relied upon by Plaintiff, is an "informal interpretation" of the statute and is only entitled to a low degree of deference to the extent that it interprets BOP's own ambiguous regulations. *See Via Christi  Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 (10th Cir. 2007) (citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *Newton v. FAA*, 457 F.3d 1133, 1136-37 (10th Cir. 2006)) (noting that "informal interpretations" include "interpretations contained in policy statements, agency manuals, and enforcement guidelines").   An agency remains free to adopt a litigation position that contradicts such a prior statement.  *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988) (citations omitted) (noting that although "[a] non-binding but valid policy statement or interpretive rule may . . . affect an agency's decisionmaking[,] . . . the agency remains free in any particular case to diverge from whatever outcome the policy statement or interpretive rule might suggest."); *Jolly v. Listerman*, 672 F.2d 935, 940-41 (D.C. Cir.1982) (finding that agency did not have to follow policy in relevant provision of Personnel Manual as the provision was "intended to be something less than a binding rule.... [Its] impact ... is clearly informative, perhaps precatory, but certainly not directive or mandatory."). Moreover,"Congress has made clear both that the federal courts, and not the administrative agencies, are ultimately responsible for construing the language of the FOIA . . . and that agencies cannot alter the dictates of the Act." *Anderson v. U.S. Dep't of Health and Human Servs.*, 907 F.2d 936, 943  (10th Cir. 1990) (citing *Public Citizen Health Research Group v. Food and Drug Admin.*, 704 F.2d 1280, 1287 (D.C. Cir.1983)).

accordingly. Defendants concede that the names of the employees are segregable from their job titles and that Plaintiff is entitled to a list of the various titles of employees at ADX. However, Defendants assert that the number of each type of employee is exempt from disclosure pursuant to Exemption 7(E), and therefore the list disclosed should include only job titles and not the number of employees holding each title.

Exemption 7(E) provides for the withholding of records or information compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). In support of their argument, Defendants cite *Fisher v. U.S. Dep't of Justice*, 772 F.Supp. 7, 12 n.9 (D.D.C. 1991), in which the court noted that "'non-investigatory' law enforcement records, to the extent that they can be fairly regarded as reflecting techniques or procedures" are exempt from disclosure pursuant to Exemption 7(E). Defendants provide no further explanation. The Court could speculate that BOP staff may participate in law enforcement investigations relating to prison disciplinary proceedings, but even so, the impact of disclosing the number of each type of employee remains vague. On this record, Defendants' argument that the disclosed list should redact the number of each position held by employees at ADX is unpersuasive.

## C.    Adequacy of the Search

This Court's Recommendation [#74] on Defendants' previously filed Motion for Summary Judgment recommended that Defendant's' Motion be denied with respect to the adequacy of Defendant BOP's records search regarding Claim II, and this portion of

the Recommendation was adopted by the District Court's Order [#79]. The Court thus ruled that Defendants had not established that their search for documents responsive to Plaintiff's request for an ADX staff roster was adequate.

In Defendants' Motion, they again assert that summary judgment should be entered in their favor with respect to the adequacy of the search. Plaintiff has not conceded the point and argues in his instant Motion that the search was inadequate. *Plaintiff's Response* [#92] at 10. Defendants, however, continue to dispute that Plaintiff's Amended Complaint alleged that their search for documents in response to Plaintiff's request for the ADX staff roster was inadequate or that Plaintiff's Request for Relief requests that the Court order a more thorough search. *See Defendants' Motion* [#88] at 1 n.1. The Court already disposed of this argument in its previous Recommendation. *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1983) (holding that to obtain summary judgment in a FOIA case, part of an agency's burden of establishing the absence of genuine issues of material fact involves demonstrating the adequacy of its records search).

In addition to the argument previously raised by Defendants in support of their search, they now argue that (1) the adequacy of the search is irrelevant if the Court rules that the staff names and titles are properly withheld under Exemption 7(F) and (2) that while it was Defendants' burden to establish that they conducted a search reasonably calculated to uncover responsive documents, there is a presumption that the agency declaration and related search were made in good faith and therefore Plaintiff has the burden to rebut that presumption. In support of their Motion, Defendants have submitted the exact same evidence, in the form of Mr. Winter's Declaration, that this

Court previously found inadequate. *See Declaration of R. Winter* [#88] ¶¶ 8, 9.

As the Court noted in its previous Order, even where a responsive document clearly and efficiently responds to Plaintiff's FOIA request, that fact alone does not allow the Court to conclude that the Defendant BOP's search was adequate. *See Trenerry v. U.S. Dep't of Treasury*, 986 F.2d 1430 (Table), 1993 WL 26813 (10th Cir. Feb. 5, 1993). At issue is whether the information before the Court is sufficient for the Court to conclude that Defendants' search was adequate. The Court could not so conclude on Defendants' prior motion, and it remains unable to resolve the disputed issue of fact as to whether Defendants' search was adequate. As Plaintiff points out, it is possible that a responsive document exists that was not compiled for law enforcement purposes. Regardless, however, "the relevant inquiry is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" *Abdelfattah*, 488 F.3d at 182 (quoting *Weisberg*, 745 F.2d at 1485). "To demonstrate the adequacy of its search, the agency should provide a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched." *Id.* (citations and internal quotations omitted). The Court locates no case law, and Defendants provide none, establishing the proposition that where a responsive document was located and deemed properly withheld no further search by the agency is necessary.

Defendants' second argument also is without merit. As they did in their previous motion, Defendants contend that Plaintiff has failed to adequately oppose their motion for summary judgment because his argument that the search was inadequate is

"speculative." In support of their argument, Defendants cite *Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770 (D.C. Cir. 1980) for the proposition that Plaintiff must present more than "purely speculative claims about the existence of other documents" in order to overcome "the presumption that the agency declaration and related search were made in good faith." *Defendants' Reply* [#94] at 7-8.

However, in *Ground Saucer Watch*, the court noted as a preliminary matter that the "[a]gency affidavits . . . at issue were relatively detailed and nonconclusory." 692 F.2d at 771. The court then considered the document seeker's arguments that the search was inadequate. Specifically, the document seeker contended that the search instructions given to agency employees by the agency were given in bad faith because the agency did not instruct employees to search for all documents requested. *Id.* at 772. The court rejected this argument because the original request had been refined by a stipulation of the parties drafted by the document seeker and the search instructions were in line with the refined request. *Id.* The document seeker also contended that the search was in bad faith because the agency failed to produce those documents which were referenced in documents disclosed by the agency. *Id.* Again, the court rejected the document seeker's argument, relying on the specifics of the search provided by the agency in its affidavits. *Id.* While Defendants are correct that an agency's efforts to search for responsive documents are presumed to have been made in good faith, the agency must first provide some detail about the search that the agency undertook. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (noting that part of the purpose of a detailed *Vaughn* index is to assure the Court that the agency "made a good faith effort to conduct a search for the requested records, using methods which

22

can be reasonably expected to produce the information requested."). As the Court noted in its prior Recommendation, Plaintiff is unable to argue more specifically as to the inadequacies of the search because of the deficiency of Defendant BOP's declaration. Viewing the evidence in the light most favorable to Plaintiff, as it must, the Court concludes that Defendants have not established an absence of a material fact as to the adequacy of the search.

Accordingly, I respectfully **RECOMMEND** that Defendants' Motion be **DENIED in part** with respect to the adequacy of Defendant BOP's records search regarding Claim II and with respect to withholding of the number of each type of ADX employee and otherwise **GRANTED in part**. I further **RECOMMEND** that Plaintiff's Motion be **GRANTED in part** and **DENIED in part** and that Defendants be ordered to produce the ADX staff roster with the names redacted and all other information left intact.

## IV. Claim V

In Claim V of his Complaint, Plaintiff requests that all records and information maintained by the United States Attorney for the District of Colorado pertaining to *United States v. Mark Jordan*, No. 04-cr-00229-LTB, be made available to him in CD-ROM format. *Complaint* [#26] at 11. In its Order on the previous Motions, the Court denied Defendants' request for summary judgment on this claim because they had not established that the documents requested could not be easily reproduced in CD-ROM format. *See Order* [#79].

In their Motion currently before the Court, Defendants now explain that they are willing to provide Plaintiff the records in CD-ROM format but that Plaintiff has not paid the necessary fee. *Defendants' Motion* [#88] at 9-10. As evidence of their willingness

to thus comply with the relief requested in Claim V, Defendants refer the Court to a letter of October 26, 2009, in which an employee of the Executive Office for United States Attorneys explained to Plaintiff that the government is willing to provide the records in CD-ROM format but that producing the documents in CD-ROM format will require that Plaintiff pay duplication fees in excess of $250. *See* Docket No. 88, Exhibit A-3. Defendants argue that therefore Plaintiff's Motion for Summary Judgment as to Claim V is now moot, *see Defendants' Motion* [#88] at 9-10, and Plaintiff agrees. *See Plaintiff's Reply* [#91] at 5. Defendants further contend that "[i]f Plaintiff wants his FOIA request processed further, he needs to pay the $250 advance fee, or request a fee waiver and exhaust administrative remedies on a denial of any such request." *Defendants' Motion* [#88] at 10. While Plaintiff concedes that Defendants have agreed to offer the records in CD-ROM format, he "disputes he must prove he exhausted administrative remedies by paying an advanced fee or appealing a denial of a request for fee waiver. No fee related issue is before the court. Plaintiff has exhausted administrative remedies as to EOUSA's denial of his request to produce the requested information on CD-ROM. No other issue is before the Court." *Plaintiff's Response* [#92] at 12. Plaintiff contends, however, that he is entitled to his litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E)(ii) because Defendants voluntarily changed their position on the availability of the records in electronic format.

It is not clear from Defendants' filing whether they believe a fee issue is before the Court. At any rate, the relief requested in Claim V was limited to a request that the records be made available on CD-ROM, and as Defendants have agreed to comply,

there is no further relief available as to Claim V that this Court might provide.[7]  *See Anderson*, 3 F.3d at 1384 (noting that plaintiff's FOIA claim properly dismissed as moot where plaintiff had received document requested "and no substantive controversy as to the documents remained" and holding that plaintiff could nevertheless pursue request for attorney's fees arising from the claim ruled moot).  Accordingly, I **RECOMMEND** that Defendants' Motion as to Claim V and Plaintiff's Motion as to Claim V be **DENIED as moot**.

## V. Conclusion

Accordingly, I respectfully **RECOMMEND** that Defendants' Motion be **DENIED in part** with respect to the adequacy of Defendant BOP's records search regarding Claim II and with respect to withholding of the number of each type of ADX employee and otherwise **GRANTED in part**.  I further **RECOMMEND** that Plaintiff's Motion be **GRANTED in part** and **DENIED in part** and that Defendants be ordered to produce the ADX staff roster with the names redacted and all other information left intact.  I further **RECOMMEND** that Defendants' Motion as to Claim V and Plaintiff's Motion as to Claim V be **DENIED as moot**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b);

---

[7]As Plaintiff recognizes, if he wishes to pursue a claim for costs, he must file a separate motion on the issue.

*Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  April 19, 2010

BY THE COURT:
 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix